BIRKNER *v.* PURDON

1. EVIDENCE—INSPECTION CERTIFICATES—DEPARTMENT OF AGRICULTURE—BUSINESS RECORDS—EXCEPTION TO HEARSAY RULE.
  Inspection certificates of the United States Department of Agriculture are admissible under the business records exception of the hearsay rule (MCLA §§ 600.2146, 289.631 *et seq.*; 7 USC § 1621 *et seq.*).

REFERENCES FOR POINTS IN HEADNOTES
[1] 30 Am Jur 2d, Evidence §§ 498, 927, 931, 933.
[2] 46 Am Jur, Sales §§ 727, 758–769.
[3] 46 Am Jur, Sales § 689 *et seq.*

2. SALES—CHRISTMAS TREES—REVOCATION OF ACCEPTANCE—REASON-
ABLE TIME.

> Buyer revoked his acceptance of Christmas trees within a reason-
> able time (one month) where testimony tended to show that
> immediate discovery of defects was difficult because of the
> time required for the trees to open up after being flattened
> in transit; that on several occasions buyer had been expressly
> assured by seller that the trees delivered were of good quality;
> that, because of the slow build-up of the selling season, it was
> difficult to judge the merchantability of the trees until the
> weekend of December 17th; and, finally, that buyer's relative
> inexperience limited his appreciation of the defects (MCLA
> § 440.2608).

3. DAMAGES—CONTRACTS—BREACH OF CONTRACT.

> Damages for lost profits was proper where Christmas trees
> delivered to buyer did not meet contractual requirements.

Appeal from Oakland, Arthur E. Moore, J. Sub-
mitted Division 2 October 14, 1970, at Detroit.
(Docket No. 7,191.)   Decided October 28, 1970.

Complaint by Martin Birkner against Robert
Purdon to recover an unpaid purchase price due on
a contract.   Robert Purdon counterclaimed alleging
the goods did not meet contract requirements and
were of inferior quality.   Judgment for defendant.
Plaintiff appeals.   Affirmed.

*Darden, Neef & Heitsch,* for plaintiff.

*Kenney, Kenney, Chapman & Prather (John A.
Cook,* of counsel) for defendant.

Before: J. H. GILLIS, P. J., and DANHOF and
MAHINSKE,* JJ.

J. H. GILLIS, P. J.   This is an action on an oral
contract for the sale of Christmas trees.   Plaintiff

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Birkner, a grower and wholesaler of scotch pines, sued to recover an unpaid purchase price due on the contract. Defendant Purdon, a lot-retailer, counterclaimed, alleging that the trees delivered did not meet contract requirements and were of inferior quality. The case was tried by the court sitting without a jury. From a judgment awarding defendant his counterclaim, plaintiff appeals.

At trial, defendant testified that he had ordered "Number One" trees—a designation generally used in the field of Christmas tree sales. Harry Hartjen, an experienced wholesaler and retailer of Christmas trees, testified that such a tree is over 5–1/2 feet in height, with 3 good sides, a conical shape, and a satisfactory top (one without crows' nests). A Number One tree is also free from holes or gaps.

When the trees were delivered to defendant's retail lots, defendant was of the opinion that they were not of the specified quality. He was assured by plaintiff, however, on several occasions that the trees delivered were good, saleable trees. And, because of his relative inexperience, defendant decided to retain the trees and attempt to sell them. Defendant is a teacher by profession with little experience in grading and selling Christmas trees. Plaintiff, on the other hand, is a wholesaler with 32 years of experience.

Defendant's retail lots were, according to the testimony of Hartjen, ideally located for tree sales: "The best Christmas tree lot location I have ever seen". Defendant's business records established that he incurred large expenses in an attempt to sell the trees in question, but to no avail. Of 3,555 trees delivered defendant was able to sell only 627. It was defendant's claim that the poor sales were attributable to the inferior quality of the trees.

The trial court found that the contract required the delivery of Number One trees—"meaning a common description of something which is quite good". This finding is not challenged on appeal. Both parties agree that the contract excluded defective or inferior trees. The court also found the contract had been breached in that the trees delivered did not conform to contract requirements.

Contrary to plaintiff's first contention, competent record evidence supports the trial court's finding that the trees delivered did not conform to the parties' agreement. The manager of defendant's retail lots testified:

"Generally, the shape of them were, unlike the, well, the cone shape of a Christmas tree. They were very bushy and wide all the way up. The shape of them was to me very bad, as a consumer and as the manager in the lot.

\* \* \*

"They had, some of them had a lot of crooks in the trunks, they might jet up in two places on the top, and basic flaws in the trees, holes in the trees where there would be not three sides good and there would only be two sides good on the tree".

Inspection Certificates of the United States Department of Agriculture also tended to show that the trees delivered were not of good quality. At defendant's request, an inspection of the trees was made by Department of Agriculture officials. The Inspection Certificates showed that a large percentage of the trees failed to meet U.S. Number One standards because of barron lower whorls, curved stems, crows' nests, and multiple leaders or stems. These certificates were relevant; they tended to show that the trees delivered were defective or inferior. Plaintiff contends, however, that the cer-

tificates were incompetent as hearsay and that it was error to admit them as evidence.

We hold that the inspection certificates were admissible as business records under MCLA § 600.2146 (Stat Ann 1962 Rev § 27A.2146). Although the applicability of this statute to Inspection Certificates under the Agricultural Marketing Act of 1946, as amended, (7 USC §§ 1621 *et seq.*) has not been determined by a Michigan court, the exact question has been decided by the Supreme Court of Massachusetts, under a business entries statute similar to Michigan's.

In *Sawyer & Company* v. *Southern Pacific Company* (1968), 354 Mass 481 (238 NE2d 357), United States Department of Agriculture Inspection Certificates were admitted at trial to prove the condition of cantaloupes. On appeal, the admission was held proper:

"We are of the opinion that the certificates were admissible as business records   *   *   *

*   *   *

"The certificates were made by Federal inspectors in the regular course of the business of the Department of Agriculture.

*   *   *

" 'The operations of the instrumentalities of government constitute "business" within the meaning of the statute, and this is true of the operations of state and county agencies as well as those of the federal government.' " 354 Mass 482–484 (238 NE 2d 359, 360).

The certificates in question were also competent by virtue of the Michigan Seal of Quality Act, MCLA § 289.631 *et seq.* (Stat Ann 1967 Rev § 12.93 *et seq.*). Section 13 of the Act provides in part:

"The certificate and all federal certificates relative to the condition of quality of the products shall be prima facie evidence in all courts of the state of the facts required to be stated therein."

We conclude there was sufficient competent evidence from which the trial judge could find plaintiff was obliged to supply good salable trees and in fact delivered trees of inferior quality. These findings are not, on the record, clearly erroneous. GCR 1963, 517.1.

Plaintiff next contends that defendant failed to reject the trees in a timely manner, thus waiving any claim of nonconformity. Defendant received the first of five shipments of trees on November 24, 1967. On December 21, 1967, immediately after obtaining the results of the USDA inspection and consulting with his attorney, defendant sent plaintiff a telegram revoking his acceptance of the trees.

UCC 2–608, MCLA § 440.2608 (Stat Ann 1964 Rev § 19.2608) provides in part:

"(1) The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it.

\*     \*     \*

"(b) [W]ithout discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

"(2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it".

There was testimony tending to show that immediate discovery of the defects was difficult because

of the time required for the trees to open up after being flattened in transit; that on several occasions defendant had been expressly assured by plaintiff that the trees delivered were of good quality; that, because of the slow build-up of the selling season, it was difficult to judge the merchantability of the trees until the weekend of the 17th; and, finally, that defendant's relative inexperience limited his appreciation of the defects. In light of these circumstances, the question of defendant's alleged delay was one of fact for resolution by the trier. *Cf. Hubbardston Lumber Company* v. *Bates* (1875), 31 Mich 158; *Gridley* v. *Globe Tobacco Company* (1888), 71 Mich 528. The trial judge found that defendant had revoked his acceptance within a reasonable time under all the circumstances. We find no error.

Nor are we persuaded that the method utilized by the trial judge in assessing damages, including damages for lost profits, was improper. Plaintiff's contentions on this point are answered by this Court's opinion in *Gongola* v. *Yaksich* (1966), 3 Mich App 676.

Affirmed. Costs to defendant.

All concurred.