Billy SYLVESTER, Appellant,

v.

Walter C. WATKINS, Appellee.

No. 8678.

Court of Civil Appeals of Texas,
Amarillo.

June 28, 1976.

Rehearing Denied July 26, 1976.

LaFont, Tunnell, Formby, La Font & Hamilton, Bill La Font, Plainview, for appellant.

Morehead, Sharp, Tisdel & White, Charles G. White, Plainview, for appellee.

REYNOLDS, Justice.

Declaring the balance owed by the maker of, and his default on, a promissory installment note, the trial court rendered no money judgment in favor of the holder, decreeing that the holder is not entitled to accelerate the maturity of the note until proper presentment and steps for acceleration have been made after the judgment becomes final. Because the maker expressly waived presentment, demand for payment and notice of intention to accelerate the maturity, the holder is entitled to judgment for the balance owed on the note. Reformed and affirmed.

By written contract, Billy Sylvester, a feed lot operator in Hale County, Texas, purchased from Walter C. Watkins, M.D., an Amarillo surgeon, two-thirds, or 186 head, of Watkins' herd of registered Angus cattle. The cattle were raised pursuant to a contract with Pioneer Hi-Bred Corn Company, now Pioneer Cattle Co., a division of Pioneer Hi-Bred International, Inc., to scientifically develop a genetically superior herd of pedigree Angus cattle, some calves of which Pioneer agreed to purchase at premium prices. The sale was made subject to the Pioneer contract and Pioneer's approval, and Sylvester contractually succeeded to all of Watkins' rights under the Pioneer contract. Two of the cows contracted for were not delivered.

The consideration was $158,100, subject to adjustments for death loss, disease and other excusable reasons by Watkins. Payment of the consideration was deferred as evidenced by Sylvester's combined promissory note and security agreement dated 31 August 1973. The $158,100 principal of the note was payable, together with accrued interest at a rate computable from data stated in the note, in seven equal annual installments due on the first day of December of each year, beginning in 1974, although Sylvester was given an option to prepay.

A provision of the note is that any default in punctual payment of the principal or interest as the same shall become due and payable, or default in the performance of any of the terms, covenants, or conditions contained in the security agreement, shall mature the entire indebtedness "at the option of the holder." The note has the further provision whereby Sylvester

> . . . expressly waives all notices, demands for payment, presentations for payment, notices of intention to accelerate the maturity, protest and notice of protest, as to this note and as to each, every and all installments hereof.

By the terms of the security agreement, Sylvester agreed, among other matters, to use acceptable husbandry practices in caring for all of the cattle, to apply all proceeds from the sale of calves to the scheduled interest and principal payments of the note, and to acquire and assign to Watkins life insurance in the sum of $100,000 as additional security for the payment of the note. Sylvester's failure to comply in these respects, as well as in any other listed condition, constituted a default under the security agreement. Upon the occurrence of Sylvester's default, Watkins could elect to declare the entire indebtedness immediately due and payable, Sylvester "expressly waiving notice, demand and presentment." It was provided, however, that if the proceeds from the sale of the offspring in any year shall be insufficient to make the scheduled principal and interest payments which shall be due, and if Sylvester shall otherwise be unable to make the scheduled payments on the note, then Watkins, prior to exercising his rights of foreclosure, shall first exercise the option to buy the heifer calves in the herd on the terms and at the prices set out in the Pioneer contract.

Neither the first principal installment nor the accrued interest due on 1 December

1974 was paid. On 8 January 1975, Watkins, presumably without presenting the note to or making demand of Sylvester for payment of the delinquent amounts or giving notice of intention to accelerate the maturity of the note, instituted this suit. His original petition alleged a default in the payment of the first principal and interest installments and default in performance under the security agreement. Default under the security agreement was said to be Sylvester's failure to remit the proceeds from the 1974 sales of calves for credit on the note, to use acceptable husbandry practices in caring for the cattle, and to assign a $100,000 life insurance policy to Watkins as security for payment of the note. For these alleged defaults, Watkins elected to accelerate the maturity of the note. His prayer was for judgment for the principal of the note, accrued interest, attorney's fees and for foreclosure of his security interest lien.

Sylvester answered on 22 January 1975 with a general denial and asked for affirmative relief canceling the contract and its collateral instruments. By his pleadings, Sylvester tendered the cattle to Watkins and served notice that he would care for the cattle only for a reasonable time after which, if Watkins had not taken possession of them, they would be sold to the highest bidder. The right to cancellation was predicated on Sylvester's allegations that a number of the cows were not bred as represented to him, that some cows had been cross-bred which would render their calves unacceptable to Pioneer, that two cows were not delivered for which Watkins had made no adjustment, and that Watkins failed to purchase the heifer calves prior to initiating foreclosure proceedings.

Afterwards, the parties entered into a stipulation that the sale of the cattle during the pendency of the suit or Sylvester's payment to Watkins of the proceeds from the sale or any other payment would not constitute a waiver of any defense or cause of action which had been or may thereafter be pleaded. The cattle were sold, apparently by mutual agreement of the parties, to Alan Witcher in consideration of his $85,663.50 note to be held by Watkins.

The trial pleadings were Watkins' second amended original petition and Sylvester's second amended answer and cross-action. To a large extent, the pleadings were elaborations on the original pleadings. More specifically, Watkins eliminated his request for foreclosure of his security interest lien, and enlarged his pleadings to request that pursuant to the Uniform Declaratory Judgments Act, Vernon's Ann.Civ.St. art. 2524-1, the court determine the amount of adjustment, if any, to which Sylvester is entitled, the balance owed on the note and whether Watkins is entitled to accelerate maturity of the note. Sylvester, in turn, enlarged his pleadings to allege an expenditure totaling, and to pray for the recovery of, $30,000 for the care of the cattle.

The trial court submitted the disputed facts to and received from the jury a verdict thereon. Corresponding to the numbered special issues, the jury found that Sylvester failed to (1) care for the cattle using good and acceptable husbandry practices, (2) acquire and assign to Watkins the life insurance policy required by their agreement, and to (3) timely remit the proceeds from the sale of offspring as the agreement required. The jury failed to find that (4) Watkins or his agent misrepresented the cattle and that Sylvester relied on the misrepresentation, if any, or that (6) Sylvester notified Watkins of his revocation of the acceptance of the herd within a reasonable time. The jury also found that (5) Sylvester was entitled to an adjustment of $11,812.50 for an excessive number of "open" and cross-bred cows, which (7) substantially impaired the value of the herd to Sylvester.

Determining the undisputed facts of the transaction as a matter of law and accepting the jury's verdict, the trial court found that the balance of principal and interest due on the note—after adjustments for the purchase price of the two undelivered cows and the sum found by the jury and credits for proceeds from the sales of calves and the Witcher note which Watkins received—

is $65,492.30, that Sylvester is in default on the note and that Watkins is entitled to accelerate the maturity of the note provided a proper presentment and notice of acceleration is given. The material decretal portion of the judgment then reads:

> IT IS THEREFORE ORDERED, ADJUDGED, DECREED AND DECLARED BY THE COURT that the balance of the promissory note plus interest accrued thereon, owed to Plaintiff, Walter C. Watkins, by Defendant, Billy Sylvester, as of September 8, 1975, is $65,492.30.
>
> IT IS FURTHER ORDERED, ADJUDGED, DECREED, AND DECLARED BY THE COURT that the maturity of the note has not been accelerated and that the balance of the note is not past due, and accordingly, that no judgment for money is rendered against Defendant by this judgment.
>
> IT IS FURTHER ORDERED, ADJUDGED AND DECREED BY THE COURT that Defendant, Billy Sylvester, is in default on the note and security agreement, but that Plaintiff shall not be entitled to accelerate the maturity of the note until proper presentment of the note for payment has been made and until the proper steps for the acceleration of the maturity of the note have been made after this judgment has become final.
>
> IT IS FURTHER ORDERED, ADJUDGED AND DECREED BY THE COURT that Cross-Plaintiff, Billy Sylvester, take nothing from Cross-Defendant, Walter C. Watkins.

In short, the court decreed that Sylvester is in default and owes the balance of $65,492.30 on the note, but that Watkins is not entitled to a judgment for that amount because he has not presented the note for payment and given notice of intention to accelerate.

Sylvester has appealed. He does not challenge either the balance the court found he owes or that he is in default. Rather, he asserts in his first two points of error that the court erred in granting a declaratory judgment on Watkins' fully accrued cause of action susceptible of enforcement in an action for damages which does not end the controversy. The third and fourth points are his complaints that the court erred in rendering judgment for Watkins because Sylvester legally revoked his acceptance of the cattle and because Watkins defaulted by initiating foreclosure proceedings without buying the heifer calves as required by their agreement. In responding, Watkins takes an opposite view and further contends, in two cross-points, that the court erred in failing to render a money judgment on his cause of action.

We advert first to Sylvester's third point of error by which he contends that he legally and validly revoked his acceptance of the herd. He cites V.T.C.A., Bus. & C. § 2.608 (1968) for the three definitive requisites authorizing a revocation of an acceptance: (1) a nonconformity in the goods sold, (2) that substantially impair the value of the goods, and (3) an act of revocation occurring within a reasonable time. He then argues that the court erred in submitting special issue no. 6 because Watkins admitted a nonconformity, the jury found a number of "open" or cross-bred cows substantially impaired the value of the herd to him, and he revoked his acceptance within a reasonable time as a matter of law.

We do not consider the argument that the court erred in submitting special issue no. 6 for the reason that the contention was not preserved. No objection was made to the charge in this regard. The thrust of the point that we do consider is that Sylvester revoked his acceptance of the herd within a reasonable time as a matter of law. The reasonable time premise is that it is undisputed that delivery of the cows to him was completed on 6 October 1973, that he gave notice of nonconformity on 23 October 1973 which lead to adjustment negotiations through 22 December 1974, and that he gave notice of revocation by his 22 January 1975 pleadings filed fourteen days after Watkins had filed his suit which showed a refusal of any adjustment.

The criterion is not when the events occurred, but whether, under all of the circumstances, the act of revocation was taken

within a reasonable time after Sylvester discovered or should have discovered his grounds for revocation. V.T.C.A., Bus. & C. §§ 1.204(b), 2.608(b) (1968). Disputed was whether there was to be any adjustment and, if so, when and under what conditions. Moreover, V.T.C.A., Bus. & C. § 2.608(b) (1968) states the revocation must occur before there is any substantial change in the condition of the goods. Admitted was evidence of underfeeding, weight and death loss in the herd, and introduction of bulls into the herd which pretermitted registration, all occurring prior to the pleaded notice of revocation.

Normally, what is a reasonable time is a question of fact. *Modular Technology Corporation, Metal Board Division v. City of Lubbock,* 529 S.W.2d 273, 276 (Tex.Civ.App., Amarillo 1975, writ ref'd n. r. e.). And there is respectable authority for the principle that whether revocation of acceptance has been seasonably effected is ordinarily a question for resolution by the trier of the facts. *Dopieralla v. Arkansas Louisiana Gas Company,* 255 Ark. 150, 499 S.W.2d 610, 611 (1973); *Birkner v. Purdon,* 27 Mich.App. 476, 183 N.W.2d 598, 601 (1970); 1 Anderson, *Uniform Commercial Code,* § 1–204:4; 2 Anderson, *Uniform Commercial Code,* § 2–608:9. Here, in view of all of the circumstances, the principle is particularly applicable; the trial court properly submitted the matter to the jury, and Sylvester failed to persuade the jury that he revoked his acceptance of the herd within a reasonable time. The third point is overruled.

█ Continuing to the fourth point that Watkins is not entitled to judgment because he defaulted by initiating foreclosure proceedings without buying the heifer calves as required by the security agreement, we think the complaint is unavailing. The requirement that Watkins not exercise any rights of foreclosure prior to exercising the option to buy the heifer calves is predicated on two conditions: if the proceeds from the sale of calves shall be insufficient to make the scheduled payments, and *if Sylvester shall otherwise be unable to make the scheduled payments.* To prevail, Sylvester had the burden to show the existence of these two conditions, but there is no assertion by Sylvester that he was otherwise unable to pay the first installment and there is no reference to any evidence establishing his inability to pay. Beyond that, although Watkins originally sued for foreclosure of the security interest lien, that remedy was abandoned in his trial pleadings and there was, in fact, no foreclosure of the lien. Point four is overruled.

Reverting to Sylvester's first two points and Watkins' two cross-points, we consider the nature and propriety of the judgment entered. The parties are agreed that it is a declaratory judgment, but they disagree as to its propriety. Sylvester contends that the declaratory judgment was erroneously rendered on Watkins' fully accrued cause of action which was susceptible of enforcement by an action for damages; Watkins contends that, while the judgment is correct insofar as it declares the net indebtedness owed to him, it was error for the court to deny him judgment for that amount.

█ Although the existence of another adequate remedy does not necessarily deprive the court of jurisdiction to grant declaratory relief, *Texas Liquor Control Board v. Canyon Creek Land Corporation,* 456 S.W.2d 891, 895 (Tex.1970), the office of a declaratory judgment is the speedy determination of the rights of the parties when a real controversy has arisen and even before the wrong has actually been committed. *Cobb v. Harrington,* 144 Tex. 360, 190 S.W.2d 709, 713 (1945). But, though a declaratory judgment may be properly within the spirit of the Uniform Declaratory Judgments Act even where there is another adequate remedy, 1 McDonald, *Texas Civil Practice* § 2.03 (1965), it has been held that declaratory relief ordinarily will not be granted where the cause of action has fully matured and the action invokes an appropriate present remedy at law. *Southern Traffic Bureau v. Thompson,* 232 S.W.2d 742, 750 (Tex.Civ.App., San Antonio 1950, writ ref'd n. r. e.).

Included in Watkins' pleadings were both the request for a declared determination of certain issues and, as Sylvester points out, a plea for judgment for the balance due on the note claimed matured by acceleration. There was no objection or exception respecting the trial of these matters and the whole controversy was before the court. It does not appear that the court intended to try the cause piecemeal if a complete decision could be rendered on all of the matters in dispute; indeed, it seems obvious from the judgment rendered upon findings of Sylvester's default on the note, the amount owed and Watkins' entitlement to acceleration of the maturity when proper presentment and notice of acceleration is given, that the trial court concluded it was relegated to a declaration of rights instead of a judgment for money by Watkins' failure to present the note to Sylvester for payment and to give him notice of acceleration. The immediate question, then, is whether Watkins was required to present the note for payment of the 1 December 1974 installment and, upon Sylvester's default in payment, to give notice of acceleration. If so, Watkins was not entitled to judgment for the amount of a matured note and the declaratory judgment, not being otherwise erroneous, was proper; but, if neither presentment nor notice was required, Watkins is entitled to judgment for the amount due on the matured note.

To demonstrate that the court correctly denied Watkins a judgment for money, Sylvester relies on *Allen Sales & Servicenter, Inc. v. Ryan,* 525 S.W.2d 863 (Tex.1975), for the principle that the payee of an installment note must make demand for the payment of an overdue installment prior to exercising an option to accelerate the balance. This rule, the Supreme Court said, was a part of our jurisprudence prior to the adoption of the Negotiable Instruments Act, during the existence of that Act and, because it has not been displaced by the Texas Business and Commerce Code, it will remain a part of our jurisprudence until the legislature clearly evinces an intent that the rule be abolished. It is our opinion, however, that the rule is inapplicable under the facts of the case at bar.

*Ryan* recognizes that demand need not be made prior to acceleration in all circumstances, albeit none of the circumstances mentioned there are present here. *Ryan* refers to *Faulk v. Futch,* 147 Tex. 253, 214 S.W.2d 614 (1948). *Faulk* enunciated the same rule was valid under the Negotiable Instruments Act, and then said, "The petitioners had the right to demand the presentment of the note when payment of same was demanded by respondents, . . . and they could also waive their right to have the note actually exhibited." 214 S.W.2d 616–617. In neither of those cases is it shown that the note in litigation contained any waiver of presentment for payment or notice of acceleration.

■ Parenthetically, we note that no failure of presentment of the note as a prerequisite to payment of an installment or of Watkins' right to mature the note without actual notice was affirmatively pleaded by Sylvester. Unless the issues were tried by consent, it would appear that the matters have been waived. *Graham & Locke Investments, Inc. v. Madison,* 295 S.W.2d 234, 241 (Tex.Civ.App., Dallas 1956, writ ref'd n.r.e.). Nevertheless, Watkins has not raised this waiver issue, and it is not determinative of our resolution of the query.

■ The note and security agreement executed by Sylvester contained the provisions, heretofore recited, expressly waiving presentment of the note for payment, demand for payment and notice of intention to accelerate the maturity. The Code rule is that presentment or notice is entirely excused when the party to be charged has waived it expressly either before or after the due date. V.T.C.A., Bus. & C. § 3.511(b)(1) (1968). Additionally, the exact contention advanced by Sylvester has been decided adverse to his position. The note at issue in *Interstate Life Insurance Company v. Turner,* 371 S.W.2d 913 (Tex.Civ.App., Waco 1963, writ ref'd n.r.e.), contained the identical waiver provisions that are in the

note before us. The same argument Sylvester makes here was made there. In refusing to apply the rule expressed in *Faulk v. Futch, supra,* where no express waiver was contained in the note, the court held that demand and presentment were not necessary in view of the express waiver. 371 S.W.2d 916. For a like holding where the note contained waiver provisions, see *Whalen v. Etheridge,* 428 S.W.2d 824, 827 (Tex.Civ.App., San Antonio 1968, writ ref'd n.r.e.).

Obviously, then, where the parties have provided by their contract for the express waiver of presentment and notice of acceleration, the court should not write the contrary provisions into the note. Thus, presentment and notice of acceleration were not required of Watkins before he could accelerate the maturity of the installment note upon Sylvester's default; and a judgment disposing of all the matters should have been rendered instead of the declaratory judgment. To this extent, Sylvester's first two points and Watkins' two cross-points are sustained. The sustention obligates us to render the judgment that the trial court should have rendered. Rule 434, Texas Rules of Civil Procedure.

The trial court's judgment is reformed to provide that, in lieu of no judgment for money, Walter C. Watkins recover of and from Billy Sylvester the sum of $65,492.30, with interest thereon at the rate of ten percent as provided in the note from 8 September 1975 until paid, and in all other respects the judgment is affirmed. It is so ordered.