**DEL VALLE INDEPENDENT SCHOOL DISTRICT; John Ojeda, Danny Zieger, Eugene Johnson, Lee Machen, Kay DeVilbiss, Gary Viktorin, Chuck Greenwood, its Trustees; and Edward A. Neal, its Superintendent, Appellants,**

v.

**Enrique G. LOPEZ, Jr., Felix R. Rosales, Jr., and Maurice Walker, Sr., Appellees.**

No. 3–91–382–CV.

Court of Appeals of Texas, Austin.

Sept. 15, 1993.

Rehearing Overruled Nov. 17, 1993.

508

John T. Fleming, Henslee, Ryan & Groce, P.C., Austin, for appellants.

James C. Harrington, Texas Civil Rights Project, Austin, for appellees.

Before CARROLL, C.J., and JONES and KIDD, JJ.

KIDD, Justice.

Enrique G. Lopez, Jr., Felix R. Rosales, Jr., and Maurice Walker, Sr. (collectively "Appellees") brought suit for declaratory judgment against Del Valle Independent School District; John Ojeda, Danny Zieger, Eugene Johnson, Lee Machen, Kay DeVilbiss, Gary Viktorin, Chuck Greenwood, its Trustees; and Edward A. Neal, its Superintendent (collectively "Del Valle"). Appellees alleged that Del Valle's method for electing members at large to the Board of Trustees was unconstitutional. Appellees also requested injunctive relief enjoining Del Valle from holding elections under its at-large system. Prior to trial, Del Valle voluntarily abandoned its at-large election system. The trial court abated the action regarding the constitutionality of the election system and awarded attorney's fees to Appellees. Del Valle appeals this action of the trial court. We will affirm the trial court's judgment.

## THE CONTROVERSY

Historically, Del Valle Independent School District maintained one polling place for electing members to its Board of Trustees and utilized an at-large method of electing all the members of the Board. At the time of trial, the Board consisted of seven trustees, six of whom were Anglo and one of whom was Hispanic. No African–American had ever served on the Board, and never in the history of the school district had a minority candidate run against an Anglo and won.

In 1974, minority residents of the Del Valle school district began requesting that the number of polling places be increased for the purpose of improving access to the political process. In 1986 and 1987, minority residents formally requested that, for upcoming elections, the number of polling places be expanded. In 1988, the school district increased the number of polling places from one to five.

Since 1970, minority candidates in the school district have run a total of sixteen candidacies for the Board. Only one minority, John Ojeda, a Hispanic, has ever been elected. In 1983, Ojeda ran unsuccessfully against incumbent Kay DeVilbiss, an Anglo. In 1986, he ran unopposed on a slate with

two other candidates, both of whom were Anglo incumbents. That time, Ojeda was elected.

In 1974, Maurice Walker, an African-American, ran on a slate with another African-American and a Mexican-American. All three opposed Anglos; all three lost. In 1986, Walker ran again, this time on a slate with Felix Rosales, a Mexican-American. Both opposed Anglos; both lost. In 1989, Enrique Lopez, a Hispanic, ran against Ojeda and lost. Ojeda was on the same slate as he was in the 1986 election.

In December 1989, Appellees brought suit for declaratory judgment against Del Valle. Appellees alleged that Del Valle's at-large election scheme for electing members to the Board of Trustees violated the equal protection provision and the equal rights amendment of the Texas Constitution. Tex. Const. art. I, §§ 3, 3a (adopted 1972).[1] Appellees also requested injunctive relief enjoining Del Valle from holding elections under the at-large system.

Prior to the trial on the merits, Del Valle offered to settle by voluntarily adopting a plan creating five single-member districts and two at-large positions (the "5-2 plan"). However, because Del Valle would not admit that the at-large system was unconstitutional, Appellees rejected the settlement offer, then amended their petition, contending the 5-2 plan was also unconstitutional and seeking to enjoin the use of it in elections. The district court severed the claims relating to the 5-2 plan from those relating to the at-large system. An appeal involving the constitutionality of the 5-2 scheme is currently pending before this Court in cause number 3-92-078-CV.

After adopting the 5-2 plan, Del Valle then moved to dismiss the present cause for mootness, which the district court denied. However, the trial court abated Appellees' action challenging the constitutionality of the at-large scheme, conducting a hearing solely to determine the issue of attorney's fees. After trial, the district court awarded Appellees attorney's fees and costs under section 37.009

of the Uniform Declaratory Judgments Act, Tex.Civ.Prac. & Rem.Code Ann. § 37.009 (West 1986) ("UDJA"), and chapter 104 of the Texas Civil Practices and Remedies Code, Tex.Civ.Prac. & Rem.Code Ann. §§ 104.001–.008 (West 1986 & Supp.1993). In support of its award of attorney's fees, the court entered a declaratory judgment that (1) the at-large system violated the state constitution, (2) the Appellees' lawsuit was the catalyst that caused Del Valle to abandon its at-large scheme, and (3) the Appellees were the prevailing parties in this action.

## POINTS OF ERROR

In twenty-three points of error, Del Valle attacks the trial court's award of attorney's fees to the Appellees and determination of the unconstitutionality of Del Valle's at-large election system. In its second point of error, Del Valle argues that the trial court erred in failing to dismiss Appellees' lawsuit as moot. In its fourth, nineteenth, twentieth, and twenty-first points, Del Valle contends that Appellees did not meet the standards required for an award of attorney's fees under the UDJA. In the alternative, Del Valle maintains, in its third, fifth, and twenty-second points, that the amount of attorney's fees awarded is unreasonable. Del Valle additionally argues, in its first point, that Appellees' expert witnesses were improperly designated and thus the testimony of these witnesses should have been excluded. In its twenty-third point of error, Del Valle contends the trial court erred by failing to award attorney's fees to Del Valle.

Del Valle attacks the trial court's determination that the at-large system was unconstitutional on several grounds. In its sixth point of error, Del Valle insists that no cause of action exists under state law for changing an at-large system to a single-member system. In its seventh point of error, Del Valle contends that the trial court erred in holding that a finding of discriminatory effect is sufficient to prove a violation of the Texas Constitution. Del Valle also attacks the factual and

---

**1.** Texas adopted its equal rights amendment, Tex. Const. art. I, § 3a, in 1972. To date, sixteen states have adopted equal rights amendments.

legal sufficiency of the evidence supporting the trial court's judgment in points of error eight through eighteen.

## ATTORNEY'S FEES

### Mootness

Del Valle moved to dismiss this action because its Board of Trustees had voted to implement the 5–2 election system on November 9, 1990. Del Valle alleged that the Board's action rendered Appellees' cause of action moot. Del Valle now argues that the trial court erred in failing to dismiss the cause as moot in its second point of error. Del Valle maintains that the Board abandoned the at-large plan on November 9, 1990, and that this action destroyed the subject matter of the present suit.

In a related fourth point of error, Del Valle attacks the attorney's fees award on the ground that Appellees did not plead a cause of action under the UDJA. They argue that Appellees were not in actuality seeking a preventative declaration regarding the at-large system under the UDJA; rather, Appellees' claim had fully matured, and they sought coercive relief.

■ In *Cobb v. Harrington*, 144 Tex. 360, 366, 190 S.W.2d 709, 713 (1945), the Texas Supreme Court announced that the UDJA "is intended as a speedy and effective remedy for the determination of the rights of the parties when a real controversy has arisen and even before the wrong has actually been committed." Furthermore, "it has been held that declaratory relief ordinarily will not be granted where the cause of action has fully matured and the action invokes an appropriate present remedy at law." *Sylvester v. Watkins*, 538 S.W.2d 827, 831 (Tex.Civ. App.—Amarillo 1976, writ ref'd n.r.e.). However, the availability of another remedy that might be entirely adequate does not necessarily deprive the trial court of jurisdiction to grant declaratory relief. *Texas Liquor Control Bd. v. Canyon Creek Land Corp.*, 456

S.W.2d 891, 895 (Tex.1970); *Armentrout v. Texas Dep't of Water Resources*, 675 S.W.2d 243, 245 (Tex.App.—Austin 1984, no writ).

■ At the time that Appellees brought this action, Del Valle was operating an at-large electoral system that Appellees contended was unconstitutional. Although Del Valle eventually abandoned the at-large system, Appellees had no guarantee that Del Valle would not reimplement its at-large election scheme in the future. Without a declaration by the court or an admission by Del Valle that the at-large system was unconstitutional, Del Valle was free to return to the at-large system. Therefore, because Del Valle refused to admit that the at-large system was unconstitutional, a declaration by the court that the system was unconstitutional was essential to Appellees' purpose: the elimination of the at-large system and the substitution of a single-member system. Accordingly, we conclude that the Appellees had a valid cause of action under the UDJA which was not moot, and we overrule Del Valle's second and fourth points of error.

### Entitlement to Attorney's Fees

In points of error nineteen and twenty, Del Valle argues that no evidence, or in the alternative, insufficient evidence exists to support the finding that Appellees' litigation was the major factor or catalyst causing Del Valle to abandon its at-large system. It objects to the court's declaration in its final judgment that the lawsuit was a catalyst that led to the change of the election system which is a prerequisite to recovery of attorney's fees.[2] Del Valle also objects to the following finding of fact issued by the trial court:

This litigation was the proximate cause and a major factor in Del Valle ISD abandoning its at-large system and changing to a single-member system. In fact, the trial of this lawsuit was the catalyst which

---

**2.** Furthermore, the trial court held that Appellees were entitled to attorney's fees pursuant to chapter 104 of the Texas Civil Practice and Remedies Code. Appellees state in their brief that they were entitled to attorney's fees pursuant to chapter 106 of the Texas Civil Practice and Remedies

Code. In their pleadings, Appellees had requested fees pursuant to both of these chapters. We note this discrepancy but do not address it as its resolution is not necessary to the disposition of this appeal.

brought about the change, which would not have happened but for this lawsuit.

Federal courts have dealt extensively with the issue of when a lawsuit serves as a catalyst, allowing recovery of attorney's fees, and we conclude that federal caselaw is instructive on this issue. In determining whether attorney's fees are appropriate under a prior version of section 1988 of the Civil Rights Attorney's Fees Awards Act of 1976,[3] the Fifth Circuit Court of Appeals stated:

> [A] defendant may unilaterally undertake action that moots the suit. In such a case, a plaintiff may still recover attorney's fees if he can show both a causal connection between the filing of the suit and the defendant's action and that the defendant's conduct was required by law, *i.e.*, not a wholly gratuitous response to an action that in itself was frivolous or groundless.
>
> Causal connection turns on "the provocative role of the plaintiff's lawsuit." The suit must be "a substantial factor or a significant catalyst in motivating the defendants to end their unconstitutional behavior." The suit must be, "if not the sole reason for his success, at least a major factor in bringing it about. A civil rights plaintiff may not collect attorney's fees for demanding that a state officer do what he would have done in any case."

*Williams v. Leatherbury*, 672 F.2d 549, 551 (5th Cir.1982) (citations omitted).

■ In reviewing a "no evidence" challenge, an appellate court may consider only the evidence and reasonable inferences which, when viewed in their most favorable light, support the finding of the trier of fact. We disregard all evidence and inferences to the contrary. *Alm v. Aluminum Co. of Am.*, 717 S.W.2d 588, 593 (Tex.1986), *cert. denied*, 498 U.S. 847, 111 S.Ct. 135, 112 L.Ed.2d 102 (1990); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). Any probative evidence supporting the finding is sufficient to overrule the point of error. *McGalliard v. Kuhlmann*,

722 S.W.2d 694, 697 (Tex.1986); *see* William Powers, Jr. & Jack Ratliff, *Another Look at "No Evidence" and "Insufficient Evidence*," 69 Tex.L.Rev. 515, 522 (1991). An appellate court should sustain an "insufficient evidence" point of error only if, after reviewing the entire record, the finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986).

■ The record demonstrates that after many years of operating under the at-large election system, Del Valle decided to utilize a system with single-member districts only weeks before the present cause was scheduled for trial on the merits. After reviewing the record, we have determined that there is legally sufficient evidence to support the finding that Appellees' lawsuit was the major factor or catalyst which brought about the change in the election system. A review of the evidence demonstrates that other factors *may* have weighed in Del Valle's decision to abandon the at-large system.[4] However, the trial court's finding and declaration that Appellees' litigation, with the impending trial, was the catalyst for abandoning the at-large system, is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Therefore, we hold that the evidence was legally and factually sufficient, and overrule Del Valle's nineteenth and twentieth points of error.

■ Point of error twenty-one attacks the declaration that the Appellees were the prevailing parties in this lawsuit. Even were we to agree with Del Valle, the award of attorney's fees would remain unchanged because such an award under the UDJA is not limited to the prevailing party. *See In re Estate of Kidd*, 812 S.W.2d 356, 360 (Tex.App.—Amarillo 1991, writ denied); *Savings & Profit Sharing Fund of Sears Employees v. Stubbs*, 734 S.W.2d 76, 80 (Tex.App.—Austin 1987, no writ); *District Judges v. Commissioners Court*, 677 S.W.2d 743, 746 (Tex.App.—Dal-

---

3. The Civil Rights Attorney's Fees Award Act of 1976, Pub.L. No. 94–559, 90 Stat. 2641, *amended by* Act of Oct. 21, 1980, Pub.L. No. 96–481, § 205(c), 90 Stat. 2321, 2330 (42 U.S.C. § 1988, since amended).

4. For example, Edward Neal testified that Del Valle had contemplated a change from the at-large system prior to the inception of this lawsuit.

las 1984, writ ref'd n.r.e.). The UDJA only requires that the award be "equitable and just." Del Valle's point of error twenty-one fails to allege that the award is not equitable and just. The trial court is given broad discretion to award attorney's fees under the UDJA. *District Judges,* 677 S.W.2d at 746. Based upon the record before us, we conclude that the trial court did not abuse its discretion. We, therefore, overrule point of error twenty-one.

### Reasonableness of Attorney's Fees

In the alternative, Del Valle argues that the amount of attorney's fees awarded by the trial court was unreasonable. In its twenty-second point of error, Del Valle contends that the evidence at trial does not support an award of $50,000. Furthermore, Del Valle argues in its third and fifth points of error that the trial court erred in awarding fees that accrued after the date Del Valle presented a settlement offer to Appellees and after the date the at-large system was voluntarily abandoned.

■ In a declaratory judgment, we may not reverse the district court's attorney's fees award except on a clear showing of an abuse of discretion. *Oake v. Collin County,* 692 S.W.2d 454, 455 (Tex.1985); *West Tex. Rehabilitation Ctr. v. Allen,* 810 S.W.2d 870, 874 (Tex.App.—Austin 1991, no writ). The legal principle encompassed in the term "abuse of discretion" concerns a legal error committed by the trial court in its award that injured or prejudiced appellants. *Jennings v. Minco Technology Labs, Inc.,* 765 S.W.2d 497, 503 (Tex.App.—Austin 1989, writ denied).

■ Citing testimony at trial that Appellees expected to expend approximately sixty hours on this appeal, Del Valle contends that the trial court erred in determining the amount of fees incurred in the present appeal. However, the trial judge may consider several factors in determining the award amount, including the quality of legal work, the time and effort required by the attorney, the nature and intricacies of the case, the extent and type of the attorney's responsibili-

ties, and the benefit resulting from litigation. *Landon v. Jean–Paul Budinger, Inc.,* 724 S.W.2d 931, 940 (Tex.App.—Austin 1987, no writ). Therefore, the trial judge was not limited to the attorneys' time estimates in determining the award amount. Instead, a variety of factors may be considered, and the record does not indicate that the trial court abused its discretion by evaluating any factors unreasonably. We overrule point of error twenty-two.

■ On January 19, 1990, Del Valle proposed a settlement offer that included adoption of the 5–2 election scheme. At the November 7, 1990 hearing on Del Valle's motion to dismiss, the trial court abated the issue of the constitutionality of the at-large system. The Board of Trustees of Del Valle adopted the 5–2 plan on November 9, 1990.

At the time of the settlement offer and the vote to abandon the at-large system, the United States Department of Justice had not conducted its preclearance review of the plan. The Justice Department subsequently invalidated the proposed 5–2 plan. Appellees were aware that even if they agreed to the proposed 5–2 plan and the Justice Department later invalidated the 5–2 plan, Del Valle would be free to reinstate the at-large plan absent a declaration of its unconstitutionality. Therefore, the issue of the at-large system's constitutionality was not moot, and the Appellees' attorneys properly incurred costs after the at-large system was temporarily abandoned.[5] Furthermore, the final judgment of the trial court provided more relief than that offered by Del Valle. Therefore, we hold that the trial court did not abuse its discretion in awarding attorney's fees to Appellees. Accordingly, we overrule Del Valle's third and fifth points of error.

### Expert Witness Testimony

■ In its first point of error, Del Valle argues that the trial court abused its discretion by failing to strike Appellees' expert witnesses on attorney's fees for the reason that the witnesses were not timely designated. The identity of expert witnesses must be disclosed not later than thirty days before

---

5. Del Valle has steadfastly refused to admit that the at-large system was unconstitutional and has

never stated that the abandonment of the at-large system was permanent.

the beginning of trial. Tex.R.Civ.P. 166b(6); *E.F. Hutton & Co., Inc. v. Youngblood,* 741 S.W.2d 363, 364 (Tex.1987). Failure to comply with this requirement results in the automatic and mandatory exclusion of the witness's testimony unless good cause is shown. *Alvarado v. Farah Mfg. Co., Inc.,* 830 S.W.2d 911, 914 (Tex.1992).

■■■ On January 4, 1990, Del Valle propounded an interrogatory requesting Appellees to designate any persons they might call as expert witnesses at trial. In response, Appellees identified two demographics experts but no attorney's fees experts. Subsequently, on November 27, 1990, the trial court heard Del Valle's motion to dismiss which it denied. At that time, the trial court abated the action challenging the constitutionality of the at-large scheme and set the hearing on attorney's fees for December 10, 1990. Before that date, on December 6, 1990, Del Valle filed a motion for a continuance which the court granted on December 7, 1990. The court also, on its own motion, granted both parties leave to complete all discovery, including the designation of expert witnesses, by January 4, 1991. The trial date was reset for February 4, 1991. On December 17, 1990, Appellees provided Del Valle with the identities of all the expert witnesses regarding attorney's fees.

Del Valle is correct in noting that, as of thirty days before the *initial* trial date, Appellees had not designated their expert witnesses who would ultimately testify as to attorney's fees. However, the month before trial was scheduled, Del Valle formally approved the decision to implement the 5–2 plan and abandon the at-large system. At that point, the issues set for trial changed. The trial court abated the issue of the constitutionality of the at-large system and limited the trial to the issue of attorney's fees. Because of the events occurring before the date set for trial, the court on its own motion reset the trial date and granted additional time for discovery. We conclude that the court acted properly in this decision, and we note that Appellees did comply with the thirty-day rule as to the *eventual* trial setting. Accordingly, we hold that the trial court did not abuse its discretion by failing to strike Appellees' expert witnesses' testimony. We overrule Del Valle's first point of error.

In point of error twenty-three, Del Valle complains that the trial court failed to consider an award of fees to its own attorneys. From a review of the record, we cannot say that the trial court abused its discretion in refusing to award attorney's fees to Del Valle. Accordingly, we overrule point of error twenty-three.

## CONSTITUTIONALITY OF THE AT-LARGE SYSTEM

■■■ As a preliminary matter, we recognize that the Texas Constitution has a vitality independent of the United States Constitution and protects additional liberties guaranteed to all citizens of Texas. *LeCroy v. Hanlon,* 713 S.W.2d 335, 339 (Tex.1986). Texas courts, along with the courts of other states, have turned to the state constitution in determining the breadth of their citizens' constitutional rights. *See, e.g., Ex parte Tucci,* 859 S.W.2d 1 (Tex.1993); *Davenport v. Garcia,* 834 S.W.2d 4, 12 (Tex.1992). Furthermore, the United States Supreme Court has reiterated its unwillingness to "limit the authority of the State … to adopt in its own Constitution individual liberties more expansive than those conferred by the Federal Constitution." *Pruneyard Shopping Center v. Robins,* 447 U.S. 74, 81, 100 S.Ct. 2035, 2040, 64 L.Ed.2d 741 (1980).[6] We acknowledge that Appellees in this cause plead violations of the Texas constitution only.

■■■ Del Valle argues, in its sixth point of error, that no cause of action under state law exists to change the at-large system to a single-member district plan. Del Valle insists that the determination of the constitutionality of an election scheme is a political question, and thus, the remedy for this action lies with the state legislature and not the judiciary. We disagree. We note that the

---

**6.** *See also City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 293, 102 S.Ct. 1070, 1077, 71 L.Ed.2d 152 (1982) ("[A] state court is entirely free to read its own State's constitution more broadly than this Court reads the Federal Constitution, or to reject the mode of analysis used by the Court in favor of a different analysis of its corresponding constitutional guarantee.").

Texas Supreme Court has concluded that "[t]he judiciary ... is both empowered and, when properly called upon, obliged to declare whether an apportionment statute enacted by the Legislature is valid." *Terrazas v. Ramirez*, 829 S.W.2d 712, 717 (Tex.1991). We hold that a party may bring a voting-rights challenge under either the Texas Constitution's equal protection clause, Tex. Const. art. I, § 3, or the equal rights amendment, Tex. Const. art I, § 3a. *Terrazas*, 829 S.W.2d at 717. Accordingly, we conclude that Appellees clearly stated a cause of action against Del Valle under article I, sections 3 and 3a of the Texas Constitution. We overrule Del Valle's sixth point of error.

In its seventh point of error, Del Valle argues that, if the Appellees did state a cause of action under Texas law, the trial court erred in articulating the appropriate test for such a violation of the Texas Constitution. Del Valle maintains that a finding of discriminatory intent, not discriminatory effect, is necessary to support a violation of the Texas Constitution. Del Valle maintains that the trial court found that Del Valle did not intentionally discriminate against minority voters and found only the effects of discrimination.[7] This attack is lodged at the court's decision under both the equal protection clause and the equal rights amendment.

This Court need not address the substance of this argument. The primary focus of this appeal concerns the award of attorney's fees. We determined that the trial court found that the Appellees stated a valid cause of action and that Appellees' litigation was the catalyst for Del Valle's voluntary abandonment of the at-large system. Since we have affirmed the trial court's findings in this regard and these findings are sufficient to sustain an award of attorney's fees under the UDJA, we need not reach point of error seven.

■ In its points of error eight through eighteen, Del Valle argues that the evidence is legally and factually insufficient to support

the trial court's findings that the at-large voting scheme of Del Valle diluted the votes of minority citizens. Del Valle contends that the evidence does not support the trial court findings of a long history of discrimination with lingering vestiges. Having previously set forth the standards for reviewing challenges to the sufficiency of the evidence earlier in this opinion, we proceed to a consideration of the evidence adduced at trial.

Dr. Robert Brischetto, an expert on voting by minorities, testified that Mexican–American and African–American voters of the Del Valle school district voted cohesively as a bloc in school board elections and that non-minority voters voted as a bloc against minority candidates in school board elections.

Del Valle attempted to discredit Dr. Brischetto's analysis. It also put forth evidence that the minority candidates had careers such as garbage collector, custodian, and delivery person; therefore, other factors may have weighed in the minds of the Del Valle residents as they cast their votes. Appellees rejoined with an example of a minority candidate who possessed a Ph.D. at the time of her candidacy, yet still lost the school board at-large election.

Federal census data introduced at trial demonstrated that the population in the Del Valle school district was approximately 30 percent Hispanic, 14 percent African–American, and 55 percent Anglo. However, as of the time of trial, no African–American and only one Mexican–American had been elected to the Board of Trustees, despite numerous election attempts by such minorities.

After a careful review of the record, we conclude that probative evidence exists to support the trial court findings. Furthermore, in light of the entire record, we do not deem the findings to be contrary to the overwhelming weight of the evidence. Accordingly, we overrule points of error eight through eighteen.

7. We note that because the trial court made no specific findings or conclusions as to the appropriate test for state constitutional violations, Del Valle merely attacks remarks made by the court recorded in the statement of facts which do not

qualify as findings of fact or conclusions of law. *In re W.E.R.*, 669 S.W.2d 716, 716 (Tex.1984); *Kinney v. Shugart*, 234 S.W.2d 451, 452 (Tex.Civ. App.—Eastland 1950, writ ref'd).

## CONCLUSION

Finding no reversible error, we affirm the judgment of the district court.