G. C. COBB ET AL V. W. O. HARRINGTON ET AL.

No. A-512. Decided November 14, 1945.
Rehearing overruled December 12, 1945.
(190 S. W., 2d Series, 709.)

*Grover Sellers*, Attorney General, *George P. Blackburn* and *C. K. Richards*, Assistants Attorney General, for petitioners.

The Court of Civil Appeals erred in holding that Harrington and Ramp were not engaged in the occupation of operating or causing to be operated motor propelled vehicles on the highways of the State for compensation or hire, and that the suit was not a suit against the State without its consent. Anderson, Clayton & Co. v. State, 125 Texas 453, 82 S. W. (2d) 941; Reagan County Purchasing Co. v. State, 110 S. W. (2d) 1194; Rogers v. Daniel Oil & Royalty Co., 130 Texas 386, 110 S. W. (2d) 891.

*T. S. Christopher* and *Culbertson, Morgan, Christopher & Bailey*, all of Fort Worth, for respondents.

The findings of the Court of Civil Appeals, which are final and conclusive, and amply supported by the evidence are correct in its conclusion that Harrington and Ramp are not motor carriers, and also that this case is properly maintainable under the Declaratory Judgment Act, Articles 2524-1, Vernon's Civil Statutes. Terrell v. Middleton, 187 S. W. 367; Murphy v. Graves, 120 Fed. (2d) 243; Seaboard Term. Corp. v. Standard Oil Co., 104 Fed. (2d) 659.

MR. JUSTICE SMEDLEY delivered the opinion of the Court.

This action, under the Uniform Declaratory Judgments Act (Chapter 164, Acts Reg. Sess., 48th Leg., Art. 2524-1, Vernon's Annotated Civil Statutes), was brought by respondents W. O. Harrington and Robert Ramp against petitioners George H. Sheppard, State Comptroller, and his deputy, G. C. Cobb, for the purpose of obtaining the rendition of a judgment declaring whether or not respondents are legally liable to pay and petitioners are legally authorized to demand, collect and receive from respondents an occupation tax measured by the gross receipts of "motor carriers" and levied by Section 1(a), Article XIV, of Chapter 184, Acts Regular Session, 47th Legislature, Article 7066b(a), Vernon's Annotated Civil Statutes.

Petitioners, represented by the Attorney General, and respondents, by their attorneys, made written stipulation of the facts. The trial court sustained a plea in abatement filed by respondent Sheppard, alleging that this is a suit against the State instituted without its consent, and dismissed the suit. This action of the trial court was based upon its conclusion from the stipulated facts that respondents are "motor carriers" and that the petitioner Sheppard was acting within the scope of his authority in attempting to enforce the collection of the taxes from them.

The Court of Civil Appeals reversed the trial court's judgment and rendered judgment "in favor of the appellants (the respondents) declaring their status under the statutes involved, to the effect that, under the facts as stipulated, they neither pursue the occupation of 'motor carrier' or 'common carrier motor carrier', nor are they liable as such for the payment of the occupation tax imposed by Art. 7066b(a)". 185 S. W. (2d) 133.

The statute above cited imposes an occupation tax upon each individual, partnership, company, association or corporation "doing business as * * * 'motor carrier' or 'contract carrier' as defined in Chapter 277, Acts Regular Session of the Forty-second Legislature (Article 911b, Vernon's Ann. Civ. St.) over and by use of the public highways, etc." The Act last mentioned, in its subdivision (g) of Section 1, defines "motor carrier" as "any person, firm, corporation, company, copartnership, association or joint stock association, and their lessees, receivers or trustees appointed by any court whatsoever owning, controlling, managing, operating or causing to be operated any motor-propelled vehicle used in transporting property for compensation or hire over any public highway in this State, etc." "Contract carrier" is defined in subdivision (h) of Section 1 as any motor carrier "transporting property for compensation

or hire over any highway in this State other than as a common carrier."

The Court of Civil Appeals, after full statement and careful consideration of the agreed facts, expressed the conclusion above stated that respondents are not motor carriers and are not subject to the occupation tax. It held, consequently, that in their attempt to force respondents to file quarterly reports and pay to the State Treasurer the occupation tax levied by the statute, the Comptroller and his deputy acted without legal authority, and that hence the suit is not to be considered as against the State. 185 S. W. (2d) 133, 138.

The facts as to the nature of the business or occupation in which respondents are engaged, shown by the stipulation made by the parties, are as follows: Respondents are the owners of certain motor trucks and trailers equipped for the transportation of goods, wares and merchandise over the highways. In the very language of the stipulation, respondents "are engaged in the business of leasing these said chattels to common carrier motor carriers as the terms 'common carriers' and 'motor carriers' are each defined in Article 911(b), Vernon's Annotated Civil Statutes." Respondents lease the trucks and trailers to motor carriers holding certificates of convenience and necessity issued to them by the Railroad Commission of Texas under the terms of said Article 911b, the leases all being made on a standard form approved by the Railroad Commission. The leases provide for a flat compensation of fifteen cents per mile for the use of the vehicles when operated under the terms of the leases. They further provide that respondents furnish at their own expense employees to drive and operate the equipment during the terms of the leases, the drivers remaining the employees of the respondents, but to be subject to the direction of the motor carriers, the lessees, for the limited purposes only of insuring the proper carriage and delivery of the cargo transported. The lessees agree to furnish in amounts not less than standard limits public liability and property damage and cargo insurance for the protection of the public. Respondents, lessors, agree to furnish at their expense workmen's compensation insurance for the drivers and to pay all social security, old age benefits and unemployment compensation taxes for the drivers. Respondents agree to pay all costs and expenses of operation and maintenance of the equipment and to indemnify the lessees against losses resulting from the injury or death of the drivers and against loss or damage resulting from the negligence, incompetency or dishonesty of the drivers, and that the lessees shall not be liable

for loss or damage to the equipment while operated by the drivers.

It is agreed that all of the motor carriers to whom respondents have leased trucks are "motor carriers" or "contract carriers" as defined by the statute and have certificates of convenience and necessity as common carriers or permits as contract carriers, and operate under the jurisdiction of the Railroad Commission, that all motor carriers and contract carriers are required by the law to charge and collect rates as prescribed by the Railroad Commission, which rates so prescribed are expressed in cents per hundred, and that the Commission has never prescribed a rate in cents per mile for the use of a truck.

The agreed facts as to the method of the operation of the trucks and the relations of respondents and the lessees to the transportation of freight are as follows: Respondents' only relations with the movement of freight are with the motor carriers and consist solely in entering into the leases of the trucks. Respondents issue no freight bills or bills of lading, solicit no freight, collect no freight charges from any shipper or receiver of freight, Respondents do not hold themselves out to the public or to any individual as being in the business of transporting freight. When respondents enter into a contract leasing a truck to a motor carrier they cause the vehicle and driver to be delivered at such place as the lessee designates and thereafter until the expiration of the lease the truck and its driver are subject to the direction and control of the lessee. The lessee loads and unloads the truck and directs when and where the truck shall be operated; and it solicits and receives freight from the general public, issuing in its own name to the shipper bills of lading on all freight transported in the leased trucks and making out in its own name its delivery receipts upon which deliveries are made and which are signed by the receiver of the freight. Respondents assume no responsibility to shippers or receivers for the freight transported and make no collection of freight charges. The freight charges collected by the lessees are those prescribed by the Railroad Commission. Respondents receive no compensation except that provided under the terms of the leases, that is, fifteen cents per mile for the use of the vehicles.

■ We agree with the Court of Civil Appeals that no other conclusion can reasonably be drawn from the facts stipulated by the parties than that respondents are not motor carriers as defined by the statute, that is, that they are not engaged in the occupation or business of operating or causing to be operated

motor-propelled vehicles used in transporting property for compensation or hire over the public highways. The lessees of respondents are engaged in that business. Respondents' business is the leasing of the trucks, with drivers, to motor carriers. This court in three cases has had before it for construction Chapter 277 of the General Laws of the Forty-second Legislature (Article 911b) and the opinion in each of those cases construes the term "motor carrier," defined in the statute, to mean one who *operates* or *uses* a motor-propelled vehicle in transporting property for compensation or hire over the public highways. Anderson, Clayton & Co. v. State of Texas, 122 Texas 530, 544, 62 S. W. (2d) 107; Anderson, Clayton & Co. v. State of Texas, 125 Texas 453, 458, 82 S. W. (2d) 941; New Way Lumber Co. v. Smith, 128 Texas 173, 180, 96 S. W. (2d) 282. By this test, the lessees of respondents, and not respondents, are motor carriers, because the lesses operate the trucks in transporting property for compensation. They hold themselves out as motor carriers of freight for compensation. They have certificates of convenience and necessity issued by the Railroad Commission authorizing them to use the public highways for that business. They solicit and receive freight for transportation, issue bills of lading, collect freight charges, load and unload the trucks, direct when and where the trucks shall be operated, and exercise control over the operation of the trucks from the time they are delivered by respondents at such places as they ,the lessees, designate, until the expiration of the leases. Respondents do none of these things.

Petitioners cite, among other authorities, Reavley v. State, 124 Texas Cr. 528, 63 S. W. (2d) 709, and Georgia Truck System, Inc. v. Interstate Commerce Commission, (5th Circuit), 123 Fed. (2d) 210, in both of which cases lessors of trucks were held to be motor carriers. In both cases, however, the court found that the trial court was warranted in concluding that the arrangements made or methods employed were merely devices or subterfuges to enable the lessors of the trucks to evade the law, that is, to use the trucks in transporting property for compensation without obtaining permits. The stipulation of facts in the instant case contains nothing even suggesting evasion or subterfuge.

■■ We approve also the decision of the Court of Civil Appeals that this is not a suit against the State. This is not a suit to impose liability upon the State or to compel the performance of its contract, as was Herring v. Houston National Exchange Bank, 113 Texas 264, 253 S. W. 813. It is not an action that is in essence one for the recovery of money from the State or in which a

judgment obtained would be satisfied by the payment out of funds in the State treasury, as was true of Ford Motor Company v. Department of Treasury, 323 U. S. 459, 65 S. Ct. 347, 89 L. Ed. (Advance Sheets) 372. It is not a suit like Short v. W. T. Carter & Bro., 133 Texas 202, 126 S. W. (2d) 953, the purpose of which was to control the Land Commissioner when acting within the scope of authority lawfully conferred upon him. This action is for the purpose of obtaining a judgment declaring that respondents are not motor carriers as defined by the tax statute, and that petitioners, in endeavoring to compel respondents to pay the tax are acting wrongfully and without legal authority. The acts of officials which are not lawfully authorized are not acts of the State, and an action against the officials by one whose rights have been invaded or violated by such acts, for the determination and protection of his rights, is not a suit against the State within the rule of immunity of the State from suit. Terrell v. Middleton, 187 S. W. 367, application for writ of error refused 108 Texas 14, 191 S. W. 1138; State of Texas v. Epperson, 121 Texas 80, 86, 42 S. W. (2d) 228; Imperial Sugar Co. v. Cabell, 179 S. W. 83; United States v. Lee, 106 U. S. 196, 1 Sup. Ct. 240, 27 L. Ed. 171; Curry, Comm'r. v. Woodstock Slag Corp. 242 Ala. 379, 6 So. (2d) 479; 49 Am. Jur. pp. 307-312, Secs. 94-95.

The Court of Civil Appeals held further that, even if this be considered an action against the State, permission to sue was granted by the Uniform Declaratory Judgments Act. As to that ruling we express no opinion.

■ Another contention made by petitioners is that the action for declaratory judgment cannot be maintained, because Chapter 214 of the Acts of the Regular Session of the Forty-third Legislature as amended by Senate Bill 400, Acts of the Regular Session of the Forty-sixth Legislature, pp. 643-644 (Article 7057b, Vernon's Annotated Civil Statutes) furnishes an adequate and exclusive remedy. That act provides in substance that any person who may be required to pay to the head of any department of the State any occupation, gross receipt, franchise, license, or other privilege tax or fee, shall pay the same, accompanying the payment by written protest; that the money paid shall be credited by the State Treasurer to a suspense fund; that the taxpayer shall have ninety days in which to file suit in Travis County against the public official to whom the payment was made, the State Treasurer and the Attorney General, and that if the taxpayer is successful in the suit the State Treasurer shall refund to him the amount that he has paid.

The general purpose of the suspense statute is to provide an adequate legal remedy whereby the taxpayer may test the validity of the law imposing the tax or the authority of the official who seeks to enforce payment of the tax, and, by providing the remedy, to prevent interference by injunction with the collection of taxes. The opinion in Union Central Life Insurance Co. v. Mann, 138 Texas 242, 247, 158 S. W. (2d) 477, contains the following statement, referring to the suspense statute: "Since the effective date of this statute, this Court has held that, in instances where it affords an adequate legal remedy, the equitable remedy of injunction no longer exists. Rogers v. Daniel Oil & Royalty Co., 130 Texas 386, 110 S. W. (2d) 891." Because the relator had in the suspense statute an adequate remedy, the Court of Civil Appeals, in Rainey v. Malone, 141 S. W. (2d) 713, rendered judgment abating a suit for mandamus against the Board of Regents of the University of Texas to compel the Board to admit relator as a student of the University without paying a $1.00 compulsory student fee. Mandamus is an extraordinary writ and, like injunction, will not issue when the relator has another adequate legal remedy for the enforcement of his right. Arkansas Building & Loan Association v. Madden, 91 Texas 461, 44 S. W. 823; Palmer Publishing Co. v. Smith, 130 Texas 346, 109 S. W. (2d) 158; Callahan v. Giles, 137 Texas 571, 155 S. W. (2d) 793.

It does not follow, however, that respondents are precluded by the suspense statute from maintaining this action for a declaratory judgment. It has been said that an action under the statute for declaratory judgment is equitable in its nature. Town of Manchester v. Town of Townshend, 109 Vt. 65, 192 Atl. 22, 110 A. L. R. 811. In our opinion, however, a better classification of the action is that it is neither legal nor equitable, but sui generis. Great Northern Life Insurance Co. v. Vince (6th Circuit) 118 Fed. (2d) 232. In Schaefer v. First National Bank of Findlay, 134 Ohio St. 511, 18 N. E. (2d) 263, 267, it is said that: "If the remedy through a declaratory judgment does not in part fill the gap between law and equity there would be little purpose in enacting the statutes providing for such procedure." Anderson, in his text book, says that the Declaratory Judgment Act "is an alternative or additional remedy to facilitate the administration of justice more readily" and further that the action for declaratory judgment" is an instrumentality to be wielded in the interest of preventative justice and its scope should be kept wide and liberal, and should not be hedged about by technicalities." Anderson's Actions for Declaratory Judgments, pp. 12, 11, Sec. 3. The action under the statute is unlike a suit in equity for injunction, in that when injunction is not

sought in aid of the action allegations that irreparable injury is threatened are not required. Nashville C. & St. L. Ry. Co. v. Wallace, 288 U. S. 249, 53 Sup. Ct. 345, 77 L. Ed. 730, 736; Aetna Life Insurance Co. v. Haworth, 300 U. S. 227, 57 Sup. Ct. 461, 81 L. Ed. 617, 622.

The Court of Civil Appeals for the Third District, in Railroad Commission v. Houston Natural Gas Corp., 186 S. W. (2d) 117, had occasion to consider the nature of the action for declaratory judgment to consider the nature of the action for declaralength, gave the statute a liberal construction, and in our opinion correctly, expressed the conclusion that the declaratory judgment proceeding is an additional remedy and does not supplant any existing remedy, but is intended as a speedy and effective remedy for the determination of the rights of the parties when a real controversy has arisen and even before the wrong has actually been committed.

■ On the question whether or not the existence of another remedy bars the right to maintain an action for declaratory judgment the decisions are in conflict. It seems that the majority of the state courts hold that declaratory relief is generally conditioned upon the absence of any other adequate relief. Anderson takes the position that the cases holding the existence of another remedy is no bar are based upon a sounder foundation, and that they announce the more modern rule. Anderson's Actions for Declaratory Judgments, pp. 134-135, Sec. 47. Borchard has the same view. Borchard's Declaratory Judgments (2d Ed.) pp. 315-337. Among the cases holding that declaratory relief may be had notwithstanding the existence of another legal remedy are the following: Penn v. Glenn. 10 Fed. Supp. 483, appeal dismissed by agreement (6th Circuit) 84 Fed. (2d) 1001; Woollard v. Schaffer Stores Co., 272 N. Y. 304, 5 N. E. (2d) 829, 109 A. L. R. 1262; Schaefer v. First National Bank of Findlay, 134 Ohio St. 511, 18 N. E. (2d) 263; Stephenson v. Equitable Life Assurance Society (4th Circuit) 92 Fed. (2d) 406; Great Northern Life Insurance Co. v. Vince (6th Circuit) 118 Fed. (2d) 232; Dunn & Bradstreet, Inc., v. City of New York, 276 N. Y. 198, 11 N. E. (2d) 728; Socony-Vacuum Oil Company, Inc. v. City of New York, 247 App. Div. 163, 287 N. Y. S. 288, affirmed 272 N. Y. 668, 5 N. E. (2d) 385. Among authorities contra are: Empire Trust Co. v Board of Commissioners and Navigation, 124 N. J. L. 406, 11 Atl. (2d) 752; Wolverine Mutual Motor Insurance Co. v. Clark, 277 Mich. 633, 270 N. W. 167; Bell Telephone Co. v. Lewis, 313 Pa. 374, 169 Atl. 571; Note 87 A. L. R. pp. 1205, 1219-1223; Note 142 A. L. R. pp. 8, 38-40; 16 Am. Jur. pp. 286-287, Sec. 13.

After reading many of the decisions, we are of the opinion that those holding that the existence of another adequate remedy does not bar the right to maintain an action for declaratory judgment are supported by the better reasoning. They give liberal scope to the Uniform Declaratory Judgments Act and thus aid in the accomplishment of the purpose for which it was enacted. They do no violence to its language, for it is written in broad and general terms and contains the express provision that it "is to be liberally construed and administered." Its first section confers upon the courts the power "to declare rights, status, and other legal relations whether or not further relief is or could be claimed." Its second section provides that any person interested under a deed, will, written contract, etc., or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract, etc., may have determined *any question* of construction or validity arising under the instrument, statute, ordinance, contract, etc.

In rejecting the contention that an action for a declaratory judgment under the Federal statute is not maintainable where there is available another adequate remedy, the court, in Penn v. Glenn, 10 Fed. Supp. 483, 486, said: "There is neither expressed nor implied in the Federal Declaratory Judgment Act any such restriction upon its use; and this court is not warranted in writing into it any such restriction." The same is true of the Uniform Declaratory Judgments Act, and we believe that a court should not write the restriction into it.

We do not hold that the declaratory judgment procedure may be used when a statute provides an administrative board or other special tribunal or special procedure for the particular type of case in hand as, for example, a workmen's compensation case. City of Erie v. Phillips, 323 Pa. 557, 187 Atl. 203; Borchard's Declaratory Judgments, pp. 342-346; Anderson's Actions for Declaratory Judgments, pp. 142-146, Sec. 49. The suspense statute is not of that kind. It applies in general to any occupation, gross receipt, franchise, license or privilege tax or fee required to be paid to any state official and authorizes suit in any court of competent jurisdiction in Travis County.

Petitioners make the point that the trial court did not try the case on the merits, but passed only on the plea in abatement or to the jurisdiction, and that the Court of Civil Appeals therefore was not authorized to render a declaratory judgment. In our opinion it very clearly appears from the pleadings, the written stipulation and the trial court's order of dismissal that the actual controversy between the parties, that is, the question whether petitioners are motor carriers and subject to the occupation tax,

was in fact determined by the trial court, and that its determination of that controversy was the basis for its final order of dismissal, from which the appeal was taken. The facts as to the nature of the business in which respondents are engaged were stipulated in great detail, the written agreement providing that it might be introduced by either party on the trial of the cause. The trial court's order of dismissal recites that the court heard and considered "the evidence adduced by the stipulations of fact on file herein" and is of the opinion that the court is without jurisdiction, for the reasons that respondents are motor carriers within the terms of the statutes, that the statutes are applicable to them, that the Comptroller was acting within the scope of his authority in attempting to enforce the collection of the taxes, and that the action is, therefore, a suit against the State. The whole controversy was placed before the court by the stipulation, and the trial court's order of dismissal determined, was declaratory of, the whole controversy. It is our opinion that the Court of Civil Appeals was authorized to render on the agreed facts the judgment that the trial court should have rendered.

■ Finally, petitioners contend that the trial court was without jurisdiction of the cause by reason of the lack of allegations as to the amount in controversy. It is true that respondents' petition filed in the district court contains no averments as to the amount of the taxes that petitioners are seeking to compel respondents to pay, but the written stipulation of facts signed by the attorneys for both parties recites that petitioners, after checking respondents' books and records, compiled a statement showing that respondents owed the State, as taxes under Article 7066b(a), $901.86, and demanded payment of that amount. As has been said, the stipulation contains a full statement of the facts as to the nature of respondents' occupation or business. It was filed in the trial court, served as the basis of that court's judgment, and by order was sent to the Court of Civil Appeals and there filed as a part of the record. The stipulation is so complete that, of itself, it shows what the controversy between the parties is, and the facts out of which the controversy arose, and leaves nothing for the court but to declare the law arising from the facts. It is in substantial, although not literal, compliance with Rule 263, formerly Article 2177, under which an agreed statement of the facts and the judgment constitute the record in the cause. State v. Connor, 86 Texas 133, 23 S. W. 1103; Bomar v. West, 87 Texas 299, 28 S. W. 519. It has been held that when a case is tried on an agreed statement of facts under Article 2177 the pleadings are immaterial. Scott v. Slaughter, 97 Texas 244, 77 S. W. 949; Jones v. Hext,

67 S. W. (2d) 441, application for writ of error refused. See also Bigfoot Independent School District v. Genard, 133 Texas 368, 370-371, 129 S. W. (2d) 1213, Id. (Texas Civ. App.) 116 S. W. (2d) 804. We may, therefore, in this case, look to the stipulation to ascertain the amount in controversy.

The judgment of the Court of Civil Appeals is affirmed.

Opinion delivered November 14, 1945.

Rehearing overruled December 12, 1945.