Henry J. NOVAK, Appellant,

v.

The M.D. ANDERSON CANCER CENTER; John Mendelsohn, M.D.; and John Does Nos. 1 through 10, Appellees.

No. 03–99–00150–CV.

Court of Appeals of Texas, Austin.

March 9, 2000.

Released for Publication June 29, 2001.

513

Henry J. Novak, Austin, for Appellant.

Merle Hoffman Dover, Assistant Attorney General, Austin, for Appellees.

Before Justices JONES, KIDD and POWERS.*

JOHN E. POWERS, Senior Justice (Retired).

Henry J. Novak ("Novak") appeals from a judgment dismissing, for want of jurisdiction, his suit against the M.D. Anderson Cancer Center ("MDA"), John Mendelsohn ("Mendelsohn"), president of MDA, and ten other defendants identified only as "John Doe." We will reverse the judgment in part, remanding that part of the cause to the trial court, and affirm the remainder of the judgment.

## NOVAK'S ORIGINAL PETITION

Novak alleged that in January 1998, Mendelsohn and the John Doe defendants schemed or conspired to defraud persons to whom they mailed a form letter soliciting money contributions to MDA. (Novak received such a letter but sent no money in response to it.) The letter contained the following statements which Novak alleged were false:

> When it comes to cancer, the odds are in your favor! The fact is that well over 50% of people with cancer who are cared for at ... M.D. Anderson Cancer Center return home cured.
>
> * * *
>
> [W]ell over 50% of the cancer patients who come to us for help are cured.

Mendelsohn and the John Doe defendants, according to Novak's allegations, knew the foregoing representation of a fifty-percent cure rate was untrue, constituted a half-truth, effectively concealed one or more material facts, or was made with reckless indifference for the truth; and, Mendelsohn and the John Doe defendants intended thereby to induce the recipients of the letter to send money to such defendants in reliance thereon.

Novak alleged that the conduct of Mendelsohn and the John Doe defendants was both unlawful and outside the course and scope of their employment as officers, directors, agents representatives, and employees of MDA and the University of Texas System of which MDA is a constituent part. Novak sued individually and as representative of a class of persons who received the form letter. He did not allege that the State had consented to his suit in any manner.

In addition to a prayer for general relief and for recovery of attorney's fees and costs, Novak requested declaratory and injunctive relief as follows:

1. a declaratory judgment that Mendelsohn and the John Doe defendants, while acting under color of their employment at MDA, violated the prohibitions contained in title 18 United States Code sections 371 and 1341, together with a permanent injunction against their "publishing, uttering, or publicly disseminating the fifty-percent cure rate representation through the United States mail or in interstate commerce"; [1]

2. a declaratory judgment that Mendelsohn (a physician) and any John Doe defendant who was a physician, violated the prohibitions implicit in sections 3.08(4) and

---

* Before John E. Powers, Senior Justice, (retired), Third Court of Appeals, sitting by assignment. *See* Tex.Gov't Code Ann. § 74.003(b) (West 1998).

1. Section 371 authorizes a fine and imprisonment for conspiring to commit any offense against the United States; section 1341 authorizes a fine and imprisonment for using the mail to obtain "money or property by means of false or fraudulent pretenses, representations, or promises." *See* 18 U.S.C.A. §§ 371, 1341 (West Supp.1999).

(6) of the Texas Medical Practice Act, Texas Revised Civil Statutes Article 4495b;[2]

3. a declaratory judgment that the conduct attributed to Mendelsohn and the John Doe defendants lay outside the course and scope of their employment by MDA; and

4. a declaratory judgment that the money had and received as a result of the January 1998 letter was obtained by false and fraudulent means and was not the lawful property of MDA, the University of Texas System, or the State of Texas, together with an injunction compelling Mendelsohn, in his capacity as president of MDA, to return such money to those who had contributed it.

## MDA'S ORIGINAL ANSWER

MDA answered in the cause by filing a general denial. Although served with citation, according to the appellate record, Mendelsohn did not file an answer. Nothing in the appellate record indicates that any John Doe defendant has been identified and served with citation. The common-law defense of official immunity has not been pleaded in the case. *See Kassen v. Hatley*, 887 S.W.2d 4, 9 (Tex.1994).

## MOTION TO DISMISS FOR WANT OF JURISDICTION

Although he did not file an answer, Mendelsohn appeared generally in the cause by joining MDA in a motion to dismiss Novak's suit for want of subject-matter jurisdiction. Therein they alleged as follows:

1. Novak's suit was barred by the doctrine of sovereign immunity;

2. Novak lacked standing to maintain a cause of action for common-law fraud because he did not himself send money in reliance on the January 1998 letter; and

3. Novak lacked standing to maintain a cause of action based on title 18 United States Code sections 371 and 1341 and sections 308(4) and (6) of article 4495b because these criminal and regulatory statutes do not authorize a private cause of action for their violation.

## THE JUDGMENT OF DISMISSAL

■ Novak appeals from a trial-court order that declares simply that the court considered the "Defendant's Motion to Dismiss for Lack of Jurisdiction," found the motion "meritorious," and dismissed Novak's suit, purportedly "with prejudice." (Because the merits of Novak's actions were not considered, for want of jurisdiction to do so, the words "with prejudice" are without legal effect.)

## DISCUSSION AND HOLDINGS

■ On appeal from the judgment of dismissal, we are obliged to take as true the allegations in Novak's petition and construe them favorably to his position. *See Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex.1993).

Novak contends the dismissal order "was contrary to well-settled Texas case law applicable to suits to enjoin wrongful conduct of state officials." He argues as

---

**2.** Former article 4495b comprised the Texas Medical Practice Act which has since been codified as sections 151.001–165.060 of the Texas Occupations Code (West 2000). Former section 3.08 of the Act authorized the Texas State Board of Medical Examiners to take disciplinary action against a physician for "unprofessional or dishonorable conduct that is likely to deceive or defraud the public

or injure the public" or for the physician's "use of any advertising statement that is false, misleading, or deceptive." *See* Medical Practice Act, 73d Leg., R.S., ch. 862, § 17, 1993 Tex.Gen.Laws 3374, 3386 (Tex.Rev.Civ.Stat. Ann. art. 4495b, § 3.08(4), (6), since repealed and codified at Tex. Occupations Code Ann. §§ 164.051, .052(a)(5), (6) (West 2000)).

follows: (1) unlawful conduct by state officials is not protected by the sovereign-immunity doctrine; (2) the doctrine does not bar a suit to compel a state agency or department to return to the rightful owner money illegally obtained; and (3) the fact that Novak did not send money to MDA in reliance on the January 1998 letter does not deprive him of standing because he was a "target" of the unlawful scheme or conspiracy to defraud.

### Novak's action for declaratory relief and permanent injunction

■ Novak sued to obtain a declaratory judgment that the conduct attributed to Mendelsohn and the John Doe defendants was unauthorized and wrongful for the reasons mentioned above, and to obtain a permanent injunction against their publishing or disseminating the fifty-percent cure rate in the future. He did not allege, however, that the defendants were attempting or threatening to do so. Consequently, his cause of action in this respect required a judicial decision in a hypothetical or abstract case, that is to say, an advisory opinion lying outside the trial court's jurisdiction. *See Texas Ass'n of Bus.*, 852 S.W.2d at 444; *Andrews v. Smith*, 93 S.W.2d 493, 495 (Tex.Civ.App.–Austin 1936, writ ref'd). The trial court therefore did not err in dismissing this cause of action as to the alleged class and as to Novak individually.

### Novak's action for declaratory relief and mandatory injunction

Novak sued to obtain a declaratory judgment that the conduct attributed to Mendelsohn and the John Doe defendants was unauthorized and wrongful for the reasons mentioned above, and to obtain a mandatory injunction compelling Mendelsohn to return to the owners money had and received as a result of the January 1998 letter.

■ It is well settled that "absent the State's consent to suit, a trial court lacks jurisdiction." *Texas Dep't of Transp. v. Jones,* 43 Tex.Sup.Ct.J. 143, 144, 8 S.W.3d 636. 638 (1999). However,

> [t]he acts of officials which are not lawfully authorized are not acts of the State, and an action against the officials by one whose rights have been invaded or violated by such acts, *for the determination and protection of his rights,* is not a suit against the State within the rule of immunity of the State from suit.

*Cobb v. Harrington,* 144 Tex. 360, 190 S.W.2d 709, 712 (1945) (emphasis added). "A state official's illegal or unauthorized actions are not acts of the State." *Federal Sign v. Texas S. Univ.,* 951 S.W.2d 401, 404 (Tex.1997). Consequently, a private litigant does not need legislative consent to sue the State for declaratory and injunctive relief to determine and protect his rights, as opposed to an action to recover money damages based on the illegal or unauthorized actions of a state official. *See id.; see, e.g., Director of the Dep't of Agric. & Env't v. Printing Indus. Ass'n of Tex.,* 600 S.W.2d 264, 265–66 (Tex.1980); *Texas Highway Comm'n v. Texas Ass'n of Steel Importers, Inc.,* 372 S.W.2d 525, 530 (Tex.1963); *Cobb,* 190 S.W.2d at 712.

■ Applying these precepts, we hold the sovereign immunity doctrine did not bar an action for declaratory judgment that the conduct of Mendelsohn and the John Doe defendants was unauthorized or illegal because fraudulent, as Novak alleged, nor an action to declare that the money derived from such conduct was not lawfully State property. We do not, of course, purport to speak to the merits of Novak's allegations, which we must take as true on appeal from the dismissal order.

■ Whether Novak may also obtain the requested mandatory injunction, based

on the conduct alleged, is more complicated. It is well-settled that one who "pays an illegal tax under duress has a legal claim for its repayment," even against the State, based on the principle that "the money never becomes the property of the State as against the real owner"; however, one "who voluntarily pays an illegal tax has no claim for its repayment." *Austin Nat'l Bank v. Sheppard,* 123 Tex. 272, 71 S.W.2d 242, 245–46 (Tex.1934). These rules extend as well to taxes collected by fraud or mutual mistake of fact, in addition to those collected by express or implied duress, sometimes denominated "business compulsion." *See Salvaggio v. Houston Indep. Sch. Dist.,* 709 S.W.2d 306, 308 (Tex.App.–Houston [14th Dist.] 1986, writ dism'd w.o.j.). In addition to *taxes* so paid, various *fees* collected by government have been held to come within the rules. *See, e.g., Kubosh v. City of Houston,* 2 S.W.3d 463, 468–69 (Tex.App.–Houston [1st Dist.] 1999, no pet.); *Camacho & Timmons v. Samaniego,* 954 S.W.2d 811, 822 (Tex. App.–El Paso 1997, no writ); *Merrill v. Carpenter,* 867 S.W.2d 65, 68 (Tex.App.— Fort Worth 1993, writ denied). The defendants have not suggested any reason why the nature of the sums collected by them in this instance requires different rules, and we can think of none. Indeed, any different rules would seem to be contrary to the basic principle underlying the rules, which is that money obtained by public officials through duress, mutual mistake, or fraud "never becomes the property of the State as against the real owner." *Austin Nat'l Bank,* 71 S.W.2d at 246. This does not, however, settle the matter.

■ Novak sued in his individual capacity and as representative of a class of persons defined as those who received the fund-raising letter of January 1998. *See* Tex.R.Civ.P. 42(a), (b). That is to say, he did not distinguish between those who paid money in reliance on the letter and those who did not. Because Novak sued for a mandatory injunction compelling a return of money to which the State has no lawful claim, the very nature of the relief requested precludes such injunctive relief as to Novak in his individual capacity and as to that category of persons who did not pay money in reliance on the letter. In this respect, their status is indistinguishable from that of the public at large, which suffered no injury in fact by reason of the letter. Consequently, they lack standing to maintain such an action. *See Blum v. Lanier,* 997 S.W.2d 259, 261–62 (Tex.1999); *Hunt v. Bass,* 664 S.W.2d 323, 324 (Tex. 1984).

■ Concerning the category of persons who did part with their money in reliance on the January 1998 letter, sovereign immunity does not bar their claim for the reasons given previously and they do have standing to maintain an action for declaratory relief and for a mandatory injunction compelling Mendelsohn to return their money. The fact that Novak did not personally pay money in reliance on the letter may be a relevant factor in judging whether he should properly represent the class; it does not in and of itself disqualify him from acting as representative and does not necessarily preclude the certification of a class. *See Salvaggio,* 709 S.W.2d at 307–10. And at this point in the litigation, Novak has not been denied his claim to represent a class. We hold, therefore, that the trial court erred in dismissing the suit for declaratory relief and for a mandatory injunction requiring a return of money, not lawfully owned by the State, to those who are the lawful owners.[3]

---

**3.** Passages found in appellees' brief argue the merits of the case or the question of class-action certification, for example: (1) the claim of a fifty-percent rate of cure was in

It is readily apparent that the voluntary payment rule may prove an insurmountable barrier to the certification of such a class, owing to the case-by-case determination required in actions of this kind. *See Salvaggio,* 709 S.W.2d at 307–10. That is not an issue in the present appeal. Like all matters pertaining to class-action certification, it is a matter for the trial court to decide initially and that court has not yet done so. We note that Rule 42(c) requires that such issues be determined as soon as practicable after commencement of an action. *See* Tex.R.Civ.P. 42(c).

For the reasons given, we reverse the trial-court judgment insofar as it dismisses for want of jurisdiction Novak's suit on behalf of a class of persons who paid money in reliance upon the allegedly fraudulent statement contained in the letter of January 1998, and the claims of such class members for declaratory and injunctive relief requiring a return of their money. We remand to the trial court that cause of action for proceedings not inconsistent with our opinion. We affirm the remainder of the judgment.

fact true in a certain sense; (2) "[t]here is no evidence of any attempt to defraud, any conspiracy to defraud, or any threat of injury to" appellant personally; and (3) Novak "has not shown that any other person's contribution was based on the allegedly false representation."

Appellees did not plead that Novak's allegations were made in bad faith and that issue was not, of course, considered by the trial court. The appeal is taken from the trial court's judgment on appellee's motion to dismiss, considered as a plea to the jurisdiction. For the purpose of testing jurisdiction, the trial court (and we) must accept as true the plaintiff's allegations and his good faith in making them cannot be questioned by a plea in bar, such as a plea to the jurisdiction. If a defendant contends the plaintiff's allegations are made in bad faith, he must *establish* that conclusion *before* his plea to the jurisdiction may be heard. *See Brannon v. Pacific Employers Ins. Co.,* 148 Tex. 289, 224 S.W.2d 466, 469 (1949); *Jud v. City of San Antonio,* 143 Tex. 303, 184 S.W.2d 821, 822–23 (Tex.1945). We therefore assume Novak's allegations are true and made in good faith in testing the appellees' plea to the jurisdiction.