# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00595-CV

**Kathryn F. Skalak, Elaine Kerr, Beverly Hiller, Michael H. Mason, Kenneth Bryan Jeanes, Charles W. Jeanes, individually and as executor of the estate of Jack K. Jeanes, deceased; Martha J. Beasley, Janalu Parchman, John T. Bryant, Nina Mata, individually and as co-trustee of the Don C. Mason Family Trust; Keith Bradley Mason, individually and as the co-trustee of the Don C. Mason Family Trust; and Jack Mason, Appellants**

**v.**

**Larry Bernard Book, Charlene Book Wilde, Viola Mae Book, and Cheryl Ann Book, Appellees**

## FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 51ST JUDICIAL DISTRICT NO. A-09-0949-C, HONORABLE BARBARA L. WALTHER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellants, who are members of the Mason family[1] (collectively, "the Masons"), appeal from the trial court's judgment declaring that a deed that conveyed certain property in Tom Green County reserved for the grantors a fixed one-sixteenth non-participating royalty interest in all oil, gas, and other minerals produced from that land. We will affirm.

---

[1] Kathryn F. Skalak; Elaine Kerr; Beverly Hiller; Michael H. Mason; Kenneth Bryan Jeanes; Charles Wesley Jeanes, individually and as executor of the estate of Jack Kenneth Jeanes; Martha Jill Beasley; Janalu Parchman; John T. Bryant; Nina Mata, individually and as trustee of the Don C. Mason Family Trust; Keith Bradley Mason, individually and as trustee of the Don C. Mason Family Trust; and Jack Mason.

## BACKGROUND

In 1944, several members of the Mason family conveyed a 640-acre parcel of land in Tom Green County to Ben Malechek. The warranty deed conveying the property ("the Deed") contained the following reservation:

> The grantors further reserve for themselves, their heirs and assigns, an undivided *one-half of the usual one-eighth royalty* of all oil, gas and other minerals that may be produced from the above-described land on a non-participating basis. The grantors shall not share in the bonuses or rentals but shall only share in production of minerals and it shall not be necessary for the grantors to join in the execution of any oil, gas or mineral leases but the exclusive right to execute such oil, gas or mineral leases is hereby conferred on the grantee, his heirs and assigns; it being understood that the grantors are reserving a *one-half of the usual one eighth royalty* on a non-participating basis.

(Emphases added.) The Masons are descendants of the grantors and own the royalty interest reserved in the Deed. Appellees Larry Bernard Book, Charlene Book Wilde, Viola Mae Book, and Cheryl Ann Book (collectively, "the Books") are successors in interest to Malechek.

In January 2006, "Charlene M. Wilde," as lessor, and RFW Petroleum, Inc., as lessee, executed an oil and gas lease ("the Lease") covering the property described in the Deed. The Lease required that the lessee pay the lessor a three-sixteenths royalty on all oil and gas produced under the Lease. Thereafter, RFW Petroleum's drilling operations resulted in the production of oil and gas in paying quantities. According to the Masons, an attorney representing RFW Petroleum prepared a set of division orders attempting to describe the royalty interests held by the Masons and the Books and sent them to an attorney representing the Books for his review. RFW Petroleum's attorney interpreted the Deed and the Lease to mean that the Books and the Masons were each entitled to

2

one-half of the total royalty payable under the Lease—i.e., one-half of three-sixteenths (0.09375). The Books' attorney objected to the division orders on the ground that, in his opinion, the royalty interest assigned to the Books was too low. The Books' attorney took the position that the royalty interest reserved in the Deed was limited to one-half of one-eighth and, consequently, entitled the Masons to a fixed one-sixteenth (0.0625) royalty regardless of the total royalty ultimately payable under the terms of any subsequent lease of the property. In the Books' attorney's view, no matter how large a royalty they negotiated with a lessee of the property, the Masons' royalty would always be fixed at one-sixteenth.

When the Books did not sign the division order, RFW Petroleum suspended the royalty account. *See* Tex. Nat. Res. Code Ann. § 91.402(c)(1) (West 2011) (as condition for payment of proceeds from sale of oil and gas production to payee, payor shall be entitled to receive signed division order from payee, including, among other things, the fractional and/or decimal interest in production claimed by payee). Because the Books and RFW Petroleum were unable to reach an agreement regarding the proper allocation of the three-sixteenths royalty between the Books and the Masons, the Books requested that the Masons execute a "Stipulation of Interest" in which the Masons would affirm that the reservation in the Deed was of a fixed one-sixteenth royalty. The Books planned to record the Stipulation of Interest in the Tom Green County real property records and thereby resolve the disagreement with RFW Petroleum regarding the division of the three-sixteenths royalty between the Books and the Masons. The Masons, however, declined to sign the Stipulation of Interest and were unwilling to otherwise affirm that the Deed reserved for them a fixed one-sixteenth royalty. Rather, they simply took the position that the Deed clearly and

3

expressly reserved to them a "one-half of the usual one-eighth royalty." According to the Masons, no further clarification was necessary.

When the Masons did not agree to sign the Stipulation of Interest, the Books brought this suit seeking a declaration that the interest held by the Masons was a fixed one-sixteenth royalty. The Masons filed general denials. Thereafter, the Masons filed traditional and no-evidence motions for summary judgment, asserting that there was no justiciable controversy between the Books and the Masons and that they were therefore entitled to "summary judgment denying Plaintiffs' declaratory claims."[2] The trial court denied the motions for summary judgment. The case then proceeded to a bench trial, after which the trial court rendered judgment declaring that the Deed reserved to the grantors (the Masons) "a 1/16th (one-sixteenth) non-participating royalty interest in all oil, gas and other minerals that may be produced from the Land, which is a fixed 1/16th royalty interest independent of the terms of any oil, gas, or mineral lease which may be executed pertaining to the Land." The judgment also awarded the Books $10,000 in attorneys' fees. The Masons then perfected this appeal.

**DISCUSSION**

In their first two appellate issues, the Masons contend that because there was no evidence or insufficient evidence of a justiciable controversy between the Books and the Masons,

---

[2] Although the Masons requested that the trial court render a summary judgment denying the Books' request for a declaration, if, as they claimed, there was no justiciable controversy, the trial court could only have dismissed the case for lack of jurisdiction. *See Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 445-47 (Tex. 1993) (existence of justiciable controversy is necessary component of subject-matter jurisdiction).

4

the trial court erred by denying their motion for summary judgment. The Masons further contend that after the trial, during which they assert "there was a complete lack of evidence of any justiciable controversy," the trial court should have rendered a take-nothing judgment in their favor or, alternatively, dismissed the case. We construe the Masons' first two appellate issues as arguing that, because there was no justiciable controversy between the Books and the Masons, the trial court did not have subject-matter jurisdiction over the cause and should have dismissed it.

Subject-matter jurisdiction is essential to a trial court's power to decide a case and may be challenged at any time. *See Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 445 (Tex. 1993). The question of whether a trial court has subject-matter jurisdiction is one of law that we review de novo. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). The Texas Uniform Declaratory Judgments Act gives Texas courts the power to "declare rights, status, and other legal relations whether or not further relief is or could be claimed." Tex. Civ. Prac. & Rem. Code Ann. § 37.003 (West 2008). The Act provides that

> a person interested under a deed, will, written contract, or other writings constituting a contract . . . may have determined any question of construction or validity arising under the instrument . . . and obtain a declaration of rights, status, or other legal relations thereunder.

*Id.* § 37.004 (West 2008). The Act is a remedial statute, the purpose of which is to settle and afford relief from uncertainty and insecurity with respect to those matters, and is to be liberally construed and administered. *Id.* § 37.002(b); *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995); *Cobb v. Harrington*, 190 S.W.2d 709, 713 (Tex. 1945) (declaratory-judgment action is "an

5

instrumentality to be wielded in the interest of preventative justice and its scope should be kept wide and liberal, and should not be hedged about by technicalities").

The Act does not create or augment a trial court's subject-matter jurisdiction—it is "merely a procedural device for deciding cases already within a court's jurisdiction." *Texas Ass'n of Bus.*, 852 S.W.2d at 444. A declaratory-judgment action will lie within the trial court's subject-matter jurisdiction when a justiciable controversy exists as to the rights and status of the parties before the court for adjudication and the requested declaration will actually resolve the controversy. *Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 163-64 (Tex. 2004). A justiciable controversy is one in which a real and substantial controversy exists involving a genuine conflict of tangible interest and not merely a theoretical dispute. *Bonham State Bank*, 907 S.W.2d at 467. A justiciable controversy is to be distinguished from an advisory opinion, which is prohibited under the Texas and federal constitutions. *Texas Ass'n of Bus.*, 852 S.W.2d at 444. If a justiciable controversy does not exist, the trial court must dismiss the case for lack of subject-matter jurisdiction. *Di Portanova v. Monroe*, 229 S.W.3d 324, 330 (Tex. App.—Houston [1st Dist.] 2006, pet. denied).

As an initial matter, the Masons do not dispute that RFW Petroleum was holding the royalty payments in suspense due to its concern about their proper allocation between the Masons and the Books. It is also undisputed that the Masons had an interest in the suspended royalties and that the reservation in the Deed conferred to them the right to receive royalties from RFW Petroleum. It appears, therefore, that a genuine issue existed as to their rights as well as to the rights of the Books. *See Brooks*, 141 S.W.3d 158. It further appears that a judicial declaration of the meaning

6

of the Deed's reservation would resolve the controversy regarding not only the Masons' right to receive royalties but also the Books'. In fact, such a declaration was necessary to resolve the controversy because the Masons refused to acknowledge, through a stipulation or otherwise, what they now claim they agree with—that the Deed reserved to them a one-sixteenth royalty interest. While the Masons argue that the correct resolution of the justiciable controversy was for the Books to bring a declaratory judgment action against RFW Petroleum, the Masons would still have had to be made parties to such an action. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.006(a) (West 2008) ("When declaratory relief is sought, all persons who have or claim any interest that would be affected by the declaration must be made parties."). Nevertheless, the Masons insist that there was no controversy between them and the Books and therefore the declaratory-judgment action should have been dismissed. Even if we were to conclude that the controversy created by RFW Petroleum's holding the Masons' and the Books' royalty payments in suspense was, by itself, insufficient to support the court's exercise of subject-matter jurisdiction over the Books' declaratory-judgment action, we remain unpersuaded that no justiciable controversy existed between the Masons and the Books.

In their petition, the Books alleged that "a question and dispute between [the Books] and [the Masons] has arisen about the meaning of the [royalty reservation]" in the Deed. The Books requested that the court construe the royalty reservation "as being a reservation of a 1/16th non-participating royalty interest." In response, each of the Masons filed a general denial. For example, C. Wesley Jeanes's responsive pleading asserted "a general denial of the claims and matters set forth in the pleadings of Plaintiffs." Several other of the Masons' responsive pleadings

7

asserted a "general denial of the claims and allegations asserted by Plaintiffs." Thereafter, the Masons filed a motion for summary judgment in which they argued that the Books "seek a declaration from the Court *limiting* the retained royalty interest [] to one-sixteenth," and further argued that the Books were "impermissibly seek[ing] to *change and alter* the express reservation language of the 1944 Deed." (Emphasis added.) The Masons complained that "[t]he declaratory judgment statute cannot be invoked as an affirmative ground of recovery to *revise or alter existing rights* or legal relations." (Emphasis added.) After the trial court denied the motion for summary judgment, it conducted a one-day bench trial. At the trial, the Masons appeared through their counsel, C. Wesley Jeanes, who was also named individually as a defendant. At the outset of the trial, Jeanes informed the court that the Masons believed "the case should properly proceed as a trespass to try title case rather than [] a declaratory judgment action." Jeanes's opening statement consisted almost entirely of the statement that "the Mason family did not initiate *this fight*. And we're not going to prosecute RFW Petroleum or Star Production['s] case for them." (Emphasis added.)

At trial, Brandon Archer, trial counsel for the Books, elicited testimony from John Sutton, a former district judge and a mediator, regarding a court-ordered mediation he was retained to conduct. After the trial court ordered the parties to mediation, the Books proposed a date for the mediation and asked the Masons whether the chosen date was acceptable. The Masons did not respond, and they subsequently failed to attend the scheduled mediation. Also during trial, counsel for the Books testified regarding his fees. He stated that counsel for the Masons filed a plea in abatement in which they asked the trial court to order the Books to join several additional parties

to the suit, among them Jeanes in his official capacity as the executor of his father's estate.

According to Archer:

> I personally told [Jeanes] that he had the ability to join them himself if he thought it was necessary, and encouraged him to do so and that I would not be objecting to it if he did. However, he refused, and as a result we had to go to a great deal of time and expense preparing to deal with his plea in abatement, which was an effort to shift the costs.
>
> Once that plea was heard, the Court did order that [Jeanes], in his official capacity, be served. However, we made several attempts to serve him with a citation and found it nearly impossible to do so until we finally got an order from this Court allowing us to effect substituted service. We were not able to serve him without that.[3]

Archer also testified that the Masons failed to respond to his request for disclosure, which would have required them to set forth their legal contentions with respect to the Books' request for declaratory relief, and that when Archer asked Jeanes "point blank, 'What do you think this reservation means?' [Archer] would only get an evasive response." Archer testified that Jeanes's response to this question was essentially that "the language meant whatever resulted in the greatest interest for his clients." At the conclusion of Archer's testimony, the Books rested.

The Masons did not put on any witnesses. Instead, Jeanes attempted to admit into evidence two opinions issued by Texas appellate courts. When questioned by the trial court regarding why he was seeking to introduce as evidence two cases, Jeanes replied that it was "because

---

[3] The Books' motion for substituted service recites that they attempted personal delivery of citation four times at Jeanes's usual place of abode in Dallas but were unsuccessful.

9

we believe that they constitute some evidence of party's intent back in the 1940s timeframe." Jeanes further explained:

> And specifically at page 262 of the King case the Court takes judicial notice of the fact that the usual royalty is a one-eighth royalty. The Morgan case at page 761 says the same thing. The Morgan case is a 1940 Court of Appeals [sic] decision which was adopted by the Supreme Court and is expressly referenced in the King case. And King is a 1946 opinion. Our deed here is a 1944 deed.
>
> And the purpose of this, Your Honor, is to put on some evidence that at the time this deed was executed there was a common assumption that when there was a reservation of royalty you were talking about a one-eighth royalty, and vice versa. When you're talking about a one-eighth royalty, you're talking about the usual royalty.
>
> And we believe that is some evidence of the party's intent at the time these documents were executed. That's the sole purpose of this.

After Jeanes and the court discussed whether or not it was appropriate to admit Texas caselaw as evidence, the Masons rested. In closing, the Books argued that the Deed's plain language indicated that the Masons' royalty interest was fixed at one-sixteenth. The Masons' closing was devoted entirely to arguing that "the dispute" was between the Books and RFW Petroleum and that the case was, in substance, necessarily a trespass-to-try-title case and should not have proceeded as a declaratory-judgment action. Counsel for the Masons stated "the main point that affects this case is that under a trespass action you don't get attorney's fees."

On appeal, the Masons contend that there has never been a justiciable controversy between them and the Books. They assert that they did not "by their inaction either agree or disagree with any position or opinion of [the Books' counsel], nor did they agree or disagree with any position or opinion of [counsel for RFW Petroleum] and his clients." The Masons further characterize the

10

construction of their royalty interest advanced by RFW Petroleum as "irregular" and assert that they have "never affirmatively raised any question regarding the amount or calculation of the concerned royalty interests which they own." We disagree.

First, the Masons refused to sign a Stipulation of Interest that would have clarified that the royalty interest they held was a fixed one-sixteenth. While the Masons now claim that their refusal was due to the fact that the stipulation was unnecessary because their interest was subject to no other interpretation, that is not the position they took at the time the request was made. According to Archer's testimony, the Masons' position, at least as articulated to the Books by the Masons' attorney, Jeanes, was that the reservation in the Deed meant whatever gave them the largest royalty interest.

Second, when the Books initiated litigation in an attempt to obtain a judicial declaration of the meaning of the reservation in the Deed, each of the Masons filed a general denial. While the Masons contend on appeal that the general denial served only to deny the Books' allegation that "a question and dispute between [the Books] and [the Masons] has arisen about the meaning of the Reservation," their responsive pleadings also served to deny all "of the claims and matters set forth in the pleadings of [the Books]." This would seem to be an objection to the Books' request that the court construe the reservation "as being a reservation of a one-sixteenth non-participating royalty interest." It is inconsistent for the Masons now to claim that they were only denying that there was any disagreement between them and the Books regarding the proper construction of the reservation. Tellingly, the Masons did not at that time seek to have the case dismissed for want of jurisdiction due to the absence of a justiciable controversy. Instead, they filed

11

a motion for summary judgment expressly asking the court to deny the relief the Books requested. In that motion the Masons asserted that the Books were seeking to "limit" their royalty and that the Books' interpretation of the reservation constituted an argument "against the express language of [the Deed]." The Masons further characterized the Books' declaratory judgment action as one "impermissibly seek[ing] to change or alter the express reservation of [the Deed]" and to "revise or alter existing rights." These arguments reveal that the Masons' interpretation of the reservation was different from the Books' and that they did not agree that their royalty interest was "limited" to one-sixteenth.

We are unpersuaded by the Masons' assertion on appeal that their summary judgment arguments constituted nothing more than an objection to the Books' attempt to unnecessarily alter the otherwise clear and unambiguous language of the Deed. The Books did not file suit seeking to reform the Deed or replace the words "one-half of the usual one-eighth royalty" with the words "fixed one-sixteenth" royalty. Rather, they sought a declaration regarding the meaning of the words contained in the Deed. Moreover, if, as the Masons now argue on appeal, they never disagreed with the Books and therefore there was not a justiciable controversy, the logical step for them to have taken was to file a motion to dismiss the declaratory judgment action for lack of subject-matter jurisdiction. Rather than do that, they filed a motion for summary judgment and then participated in the trial of a case whose sole purpose was to construe the language of the Deed. While they now characterize RFW Petroleum's construction of the reservation as "irregular," they were unwilling to make such a concession at any time during the pendency of the underlying cause.

12

Finally, at trial the Masons attempted to introduce into evidence two Texas cases they contended stand for the proposition that at the time the Deed was executed, the "usual royalty" was understood to be one-eighth. This evidence was ostensibly offered to prove the intent of the grantors when they reserved "one-half of the usual one-eighth royalty." Evidence of intent could only be relevant and admissible if the reservation were ambiguous and there was, as a result, a controversy regarding its meaning. The Masons appeared to be advancing the argument that, because oil and gas leases executed in the 1940s usually provided that the lessor receive no greater than a one-eighth royalty, the grantors in the Deed used the words "the usual one-eighth" in a generic sense and they should be understood to mean whatever royalty was ultimately negotiated between the lessor and lessee—in the present case three-sixteenths. If the Masons intended for their actions at trial to indicate that they in fact *agreed* with the Books and that there was no controversy about the meaning of the reservation, they should have behaved in a less cryptic manner.

The Masons' pre-litigation conduct and the statements made by their counsel, who also had a personal stake in the matter, as well as their litigation positions, belie their present contention that they never disagreed with the Books regarding how to interpret the reservation. Rather than simply not take a position, the Masons opposed any form of stipulation, admission, or judicial pronouncement regarding the meaning of the reservation. In addition, despite never filing special exceptions to the Books' pleading, the Masons attempted to convince the trial court that the litigation in which they had actively participated should have been conducted as a trespass-to-try-title suit—a cause of action that would carry no risk that an adverse ruling would result in an assessment against them of some or all of the Books' attorneys' fees.

13

The purpose of the Declaratory Judgments Act is to "settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations; and it is to be liberally construed and administered." Tex. Civ. Prac. & Rem. Code Ann. § 37.002(b) (West 2008). There was a justiciable controversy regarding the proper allocation of the three-sixteenths royalty interest held in suspense by RFW Petroleum pursuant to the natural resources code. The judicial declaration sought by the Books to resolve that controversy was not advisory and was rendered necessary by the Masons' conduct. We hold, therefore, that the trial court did not err in denying the Masons' motion for summary judgment, nor did it err by rendering a final judgment in the case rather than dismissing it for lack of jurisdiction. We overrule the Masons' first two appellate issues.

In their third issue, the Masons contend that the trial court erred in awarding the Books attorneys' fees pursuant to the Declaratory Judgments Act. *See id*. § 37.009 (West 2008) (in proceedings under chapter 37 court may award reasonable and necessary attorneys' fees as are equitable and just). The Masons characterize the Books' suit as one involving a determination of competing claims to an interest in land that consequently should have been brought as a trespass-to-try-title action. *See Martin v. Amerman*, 133 S.W.3d 262, 267 (Tex. 2004) (indicating trespass to try title is method for determining interest in land). The Masons maintain that attorneys' fees are not recoverable in a trespass-to-try-title action and that the Books may not plead their case as one for declaratory judgment in order to recover attorneys' fees not otherwise available. This argument fails for the simple reason that a royalty interest, as distinguished from a mineral interest, is a non-possessory interest. *See Natural Gas Pipeline Co. v. Pool*, 124 S.W.3d 188, 192 (Tex. 2003). Trespass-to-try-title actions are concerned with the establishment of title (legal or equitable)

14

and possession.  Accordingly, a non-possessory interest such as a royalty interest is not a proper matter for resolution by trespass to try title.  *See Ramsey v. Grizzle*, 313 S.W.3d 498, 502 n.2 (Tex. App.—Texarkana 2010, no pet.) (citing *Grasty v. Wood*, 230 S.W.2d 568, 571 (Tex. Civ. App.—Galveston 1950, writ ref'd n.r.e.)).  We overrule the Masons' third appellate issue.

## CONCLUSION

Having overruled the Masons' three appellate issues, we affirm the trial court's judgment.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Rose and Goodwin

Affirmed

Filed:   September 26, 2012

15