COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                                 NO.
2-08-445-CV

 

 

IN RE
ESTATE OF

CONARD L. FLORENCE,
DECEASED

 

                                                       ------------

 

                   FROM PROBATE COURT NO. 1 OF TARRANT COUNTY

 

                                                       ------------

 

                                                      OPINION

 

                                                       ------------

I.  Introduction

In two issues, Appellant Jarrell B.
Ormand appeals the denial of his motion for summary judgment and the granting
of Appellees Mary Gene Ness, Carroll Edward Florence, III, and Joseph S.
Florence=s[1]
cross-motion for summary judgment.  We
affirm and remand for further proceedings.[2]








II.  Factual and Procedural History

The genesis of this appeal is the
construction of the language of a will and the treatment of certain estate
property by the decedent=s widow.

Conard=s Will:

On July 28, 1981, Conard Florence
executed a will (AConard=s Will@). 
He died almost a year later, survived by his wife Eleanor Bankhead
Florence.  On August 16, 1982, Conard=s Will was admitted to probate.  Pursuant to the will, the probate court
appointed Eleanor as executor of Conard=s estate.

Article II of Conard=s Will bequeathed to Eleanor all of
his interests in the couple=s residence, club memberships,
insurance policies, all other Atangible property,@[3] and a pecuniary gift.  Article III provided in pertinent part:

I
give, devise and bequeath all of the rest, residue and remainder of my Estate,
real, personal and mixed, of whatever kind and character and wheresoever situated,
including the balance of my separate property and my interest in the community
estate of my wife, Eleanor Bankhead Florence, and myself, to Eleanor Bankhead
Florence, Trustee, in Trust for the uses and purposes on the terms and
conditions hereinafter set forth:

 

.
. . .

 








Upon
the death of my wife, the remaining corpus and income shall be distributed to
or for the benefit of such person or persons, in such amounts and proportions
and upon such terms, trusts, conditions and limitations as my said wife shall
appoint by a Will, which Will specifically refers to the power herein given
her; provided, however, that my wife shall have no power to appoint the corpus
of this Trust or any part thereof to herself or her estate, or to her creditors,
or to the creditors of her estate. . . .

 

Conard=s Will also directed that income from the testamentary trust
(ATrust@) be paid to Eleanor during her lifetime.  Finally, Conard=s Will provided that, upon Eleanor=s death, if she had not exercised her
special power of appointment over the Trust assets, the remaining Trust corpus
and income would be divided into three shares of equal value, one for each of
Conard=s then-living niece and nephewsCMary, Edward, and Joseph.

Eleanor=s Will:

On May 26, 2004, Eleanor died and her
will (AEleanor=s Will@), executed June 8, 2001, was
admitted to probate.  Eleanor=s Will designated her nephew Ormand
as independent executor of her estate and it left her estate to Ormand and to
Conard=s niece and nephewsCMary, Edward, and Joseph.  Eleanor did not exercise her power to appoint
other persons to receive the corpus of the Trust.

Conard=s Estate and Trust:

Upon Eleanor=s death, the probate court appointed
Joseph to be the successor independent executor of Conard=s open estate and the Heirs to be
successor co-trustees of the Trust.








In August 2004, Ormand, acting as
executor of Eleanor=s Will, met with the Heirs to discuss
Conard=s estate.  During the meeting, Ormand suggested that the
term Atangible property@ in Article II of Conard=s Will included personal and real
property.  The Heirs, on the other hand,
asserted that Conard intended for Atangible property@ to mean Atangible personal property,@ thereby excluding real property.[4]

The Heirs= Declaratory Action:

Ultimately, the Heirs filed two
lawsuits against Ormand, one related to Conard=s estate wherein they sought declaratory relief regarding the
meaning and intent of certain provisions in Conard=s Will and the other related to
Eleanor=s estate wherein they alleged that
Eleanor breached her fiduciary duties and committed negligence and gross
negligence.  The two lawsuits were later
consolidated and merged into one suit.

After consolidation, the Heirs filed
an amended, consolidated petition seeking a declaratory judgment regarding the
interpretation of the term Atangible property@ as used in Article II of Conard=s Will.  Apart from the aforementioned pleadings and
motions asking the probate court to interpret and declare the meaning of the
term Atangible property,@ subsequent motions were filed
questioning whether the statute of limitations barred the parties from
asserting their respective positions regarding the meaning of Atangible property.@








Ormand=s Motion for Summary Judgment:

On September 4, 2008, Ormand filed a
motion for summary judgment on the ground that the four-year limitations period
on the Heirs= will construction claim began to run
when Conard=s Will was admitted to probate in
1982.  Ormand argued that, because the
Heirs fell under the category of Ainterested persons@ in Conard=s estate, they were deemed to have
constructive knowledge of the contents of Conard=s Will and therefore should have raised their challenges
within four years after Conard=s Will was admitted for probateCthat is, some time before August 16,
1986.

The Heirs= Response and Cross-Motion for Summary Judgment:

In their response, the Heirs asserted
that a will beneficiary=s declaratory action does not begin
to accrue until the executor does some Aovert act@ showing that he is not going to
abide by the will=s terms as construed by the
beneficiary.








The Heirs filed a cross-motion for
summary judgment on two grounds.  First,
the Heirs asked for a no evidence summary judgment on the ground that Ormand
cited no summary judgment evidence of any overt act occurring more than four
years prior to their filing a declaratory action that would have notified them Athat anyone, let alone [Ormand] or
Eleanor, construed Conard=s [W]ill differently than [the Heirs]
do now.@ 
Second, the Heirs asked for a traditional summary judgment on the ground
that Ormand was barred from asserting an interpretation of Conard=s Will different from what Eleanor
had employed in dealing with Conard=s estate and Trust over the twenty-one-year time period
between Conard=s death and her own death.

The Heirs attached to their motion
Eleanor=s 1983 estate tax return, in which
Eleanor claimed that at least $472,693 in assets from Conard=s estate had passed into the Trust.[5]  They also attached a letter that Eleanor had
written to her lawyer acknowledging that the Trust should be funded and asking
her lawyer to take the steps necessary to complete that process.  Their motion alleged that:

. . . as Executrix and Trustee, Eleanor (1) maintained a
checking account in the Estate=s name; (2) executed oil, gas, and
mineral leases regarding the properties at issue in the name of the Estate and
[] Trust; (3) executed division orders regarding the properties at issue in the
name of the Estate and [] Trust; (4) directed oil, gas and mineral production
companies to distribute royalties, which were generated from Conard=s family legacy real property, to the
Estate and [] Trust; (5) deposited those royalties in the Estate checking
account; and (6) used the Estate checking account to pay for, among other
expenses, the taxes incurred by the [] Trust on the royalties generated from
Conard=s family legacy real property.[6]

Following a hearing on these motions,
the probate court denied Ormand=s motion for summary judgment on
statute of limitations and granted the Heirs= cross-motion for summary judgment. This appeal followed.








III.  Statute of Limitations

In two issues, Ormand argues that the
trial court erred by denying his motion for summary judgment and by granting
the Heirs= cross-motion for summary
judgment.  Although both parties agree
that a four-year statute of limitations applies in this case, they do not agree
on when that limitations period began to run, or when it accrued.  See Tex. Civ. Prac. & Rem. Code
Ann. ' 16.051 (Vernon 2008)
(proscribing a residual limitations period of four years).

A.  Standard of Review

When both parties move for summary
judgment and the trial court grants one motion and denies the other, the
reviewing court should review both parties= summary judgment evidence and determine all questions presented.  Valence Operating Co. v. Dorsett, 164
S.W.3d 656, 661 (Tex. 2005).

1. 
Traditional Summary Judgment








A movant is entitled to summary
judgment on an affirmative defense if the movant conclusively proves all the
elements of the affirmative defense.  Rhone‑Poulenc,
Inc. v. Steel, 997 S.W.2d 217, 223 (Tex. 1999); see Tex. R. Civ. P.
166a(b), (c).  To accomplish this, the
movant must present summary judgment evidence that establishes each element of
the affirmative defense as a matter of law. 
Ryland Group, Inc. v. Hood, 924 S.W.2d 120, 121 (Tex. 1996).  When reviewing a summary judgment, we take as
true all evidence favorable to the nonmovant, and we indulge every reasonable
inference and resolve any doubts in the nonmovant=s favor.  IHS Cedars
Treatment Ctr. of DeSoto, Tex., Inc. v. Mason, 143 S.W.3d 794, 798 (Tex.
2004).

2. 
No-Evidence Summary Judgment

After an adequate time for discovery,
the party without the burden of proof may, without presenting evidence, move
for summary judgment on the ground that there is no evidence to support an
essential element of the nonmovant=s claim or defense. 
Tex. R. Civ. P. 166a(i).  The
motion must specifically state the elements for which there is no
evidence.  Id.; Timpte Indus.,
Inc. v. Gish, 286 S.W.3d 306, 310 (Tex. 2009).  The trial court must grant the motion unless
the nonmovant produces summary judgment evidence that raises a genuine issue of
material fact.  See Tex. R. Civ.
P. 166a(i) & cmt.; Hamilton v. Wilson, 249 S.W.3d 425, 426 (Tex.
2008).

B.  Ormand=s Motion for Summary Judgment








In his first issue, Ormand argues
that the trial court erred by denying his motion for summary judgment.  Ormand contends that the Heirs, as interested
persons, are charged with notice of the contents of the probate records,
including Conard=s Will.  See Tex. Prob. Code Ann. ' 3 (Vernon Supp. 2009); Mooney v.
Harlin, 622 S.W.2d 83, 85 (Tex. 1981). 
Thus, Ormand asserts that because the term Atangible property@ has consistently been interpreted to
include both real and personal property,[7]
the Heirs had four years from the date of Conard=s Will being admitted for probate in which to bring their
declaratory action claiming that Conard intended for the term Atangible property@ to mean something different from its
accepted legal meaning.  We disagree.

The Uniform Declaratory Judgments Act
(AUDJA@) is intended Ato settle and to afford relief from uncertainty and
insecurity with respect to rights . . . and it is to be liberally construed and
administered.@ 
Tex. Civ. Prac. & Rem. Code Ann. ' 37.002 (Vernon 2008); accord Cobb v. Harrington, 144
Tex. 360, 367, 190 S.W.2d 709, 713 (1945); Puretex Lemon Juice, Inc. v. Cal.
Prods., Inc., 324 S.W.2d 449, 453 (Tex. Civ. AppCSan Antonio 1959), aff=d, 160 Tex. 586, 334 S.W.2d 780 (1960).  The UDJA provides that A[a] person interested under a . . .
will . . . may have determined any question of construction or validity arising
under the instrument . . . and obtain a declaration of rights, status, or other
legal relations thereunder.@ 
Tex. Civ. Prac. & Rem. Code Ann. ' 37.004(a) (Vernon 2008). 
Heirs at law and devisees under a will are interested persons with
standing to contest a will and they may do so in a declaratory judgment
action.  See Tex. Prob. Code Ann. ' 3(r); Foster v. Foster, 884
S.W.2d 497, 501 (Tex. App.CDallas 1993, no writ); see also
Hartman v. Solbrig, 12 S.W.3d 587, 594 n.7 (Tex. App.CSan Antonio 2000, pet. denied); Harkins
v. Crews, 907 S.W.2d 51, 55 (Tex. App.CSan Antonio 1995, writ denied).








Although we agree with Ormand that
the Heirs were interested persons who had standing to bring a declaratory
judgment action at the time Conard=s Will was admitted to probate, we do not agree with Ormand=s contention that their claim arose
and began to accrue at that time.  The
only evidence presented showed that over the twenty plus years between Conard=s death and Eleanor=s death, Eleanor treated the term Atangible property@ as if it meant Atangible personal property.@ 
And it was not until Ormand became the executor of Eleanor=s estate and asserted a different
interpretation that a conflict arose between the Heirs and EleanorCor rather, Eleanor=s estate.  Thus, we agree with the Heirs that the facts
of this appeal are analogous to the facts in Murphy v. Honeycutt, 199
S.W.2d 298, 299 (Tex. Civ. App.CTexarkana 1946, writ ref=d), and in Hornbeck v. Moran,
No. 05-96-1127-CV, 1998 WL 315624, at *1 (Tex. App.CDallas June 17, 1998, pet. denied)
(not designated for publication).








In Murphy, the heirs filed a
declaratory judgment action thirteen years after the decedent=s will had been admitted to probate,
arguing that the sale of certain property by the decedent=s widow was void because she only had
a life estate in the property, making them the true owners of the
property.  199 S.W.2d at 298.  The purchaser of the property, however,
argued that the heirs= claims were barred by the four-year
statute of limitations.  Id.  The trial court and the court of appeals
sided with the heirs, holding that their claim had not begun to accrue until
the widow deeded the property to the purchaser, thereby demonstrating that she
was not going to abide by the heirs= construction of the will. 
Id. at 299.

Likewise, in Hornbeck, the
decedent=s children filed a declaratory
judgment action against the decedent=s step-children fifteen years after the decedent=s will had been admitted to
probate.  1998 WL 315624 at *1.  The children asserted that the decedent=s wife had received only a life
estate and not a fee simple interest in certain property and that they were the
remaindermen of that property.  Id.  The decedent=s wife, however, had left the property in question to the
step-children, and the step-children argued that limitations barred the
declaratory action.  Id.  The trial court and the court of appeals
sided with the children, holding that the claim was not barred by limitations
because the accrual date occurred when the step-children refused to acknowledge
the remaindermen=s interest in the estate based on the
remaindermen=s interpretation of the decedent=s will.  Id. at *4.








Ormand argues that Murphy and Hornbeck
are both distinguishable because the plaintiffs= causes of action in both cases arose out of an attempt to
enforce the plain language of the will, while the Heirs= cause of action arises out of an
attempt to rewrite the plain language of the will.  Ormand=s argument, however, is based on the assumption that Atangible property@ does not and cannot mean Atangible personal property@ as the Heirs assert.  To support his argument, Ormand isolates the
term Atangible property@ in Conard=s Will and asks this court to apply
the generally accepted meaningCthat is, that tangible property means
personal and real property.  However, the
proper standard in construing a will is to focus on the testator=s intent.  See San Antonio Area Found. v. Lang,
35 S.W.3d 636, 639 (Tex. 2000).  The
testator=s intent is ascertained by looking at
the language found within the four corners of the will.  Id. 
If possible, all parts of the will must be harmonized, and every
sentence, clause, and word must be considered in ascertaining the testator=s intent.  See Steger v. Muenster Drilling Co., Inc.,
134 S.W.3d 359, 372 (Tex. App.CFort Worth 2003, pet. denied).

Ormand=s argument leads us down a path that requires us to address
the merits of the case.  Because this is
not an appeal on the merits but rather on limitations, we decline to go down
that road.  We hold that, as a matter of
law, the Heirs= declaratory judgment action did not
begin to accrue until Ormand asserted his interpretation of Atangible property,@ thereby demonstrating that he was
not going to abide by the Heirs= construction of Conard=s Will.  See Murphy, 199 S.W.2d  at 299; Hornbeck, 1998 WL 315624, at
*4.  We further hold that the trial court
did not err by denying Ormand=s motion for summary judgment on statute
of limitations.  Accordingly, we overrule
Ormand=s first issue.

C.  The Heirs= Cross-Motion for Summary Judgment








In his second issue, Ormand contends
that the trial court erred by granting the Heirs= cross-motion for summary judgment because (1) the Heirs= proposed accrual test is incorrect and,
therefore, the Heirs= no-evidence argument fails and (2)
Ormand=s limitations defense is not Ain substance@ a declaratory action that is barred
by limitations.

When a party moves for summary
judgment under both rules 166a(c) and 166a(i), we will first review the trial
court=s judgment under the standards of
rule 166a(i).  Ford Motor Co. v.
Ridgway, 135 S.W.3d 598, 600 (Tex. 2004). 
If the appellant failed to produce more than a scintilla of evidence
under that burden, then there is no need to analyze whether the appellees= summary judgment proof satisfied the
less stringent rule 166a(c) burden.  Id.

In the first part of the Heirs= cross-motion for summary judgment,
they asserted that the trial court should strike Ormand=s limitations defense because there
is no evidence of any overt act occurring more than four years prior to their
filing a declaratory action.  Because we
addressed this argument under Ormand=s first issue, and concluded that Aovert act@ is the proper accrual test and that
it was not until Ormand became the executor of Eleanor=s estate and asserted a different
interpretation that a conflict arose between the Heirs and EleanorCor rather, Eleanor=s estate, we need not address it
again.  See Tex. R. App. P.
47.1.  We hold, therefore, that the trial
court did not err by granting the Heirs= cross-motion for summary judgment.  Accordingly, we overrule this portion of
Ormand=s second issue, which is dispositive,
and do not reach the remaining portion of Ormand=s second issue.








IV.  Conclusion

Having overruled Ormand=s first issue, we affirm the portion
of the trial court=s October 22, 2008 order denying
Ormand=s motion for summary judgmentCthus, the Heirs= tangible personal property claims
are not barred by the statute of limitations. 
Having overruled the dispositive portion of Ormand=s second issue, we affirm the portion
of the trial court=s October 22, 2008 order granting the
Heirs= cross-motion for summary
judgment.  We remand this case to the
trial court for further proceedings.

 

 

BOB
MCCOY

JUSTICE

 

 

PANEL:  LIVINGSTON, MCCOY, and MEIER, JJ.

 

DELIVERED: March
11, 2010











[1]From this point on, we refer to Appellees as Mary,
Edward, and Joseph in their individual capacities and as Athe
Heirs@ in their collective capacity.





[2]This is an interlocutory appeal of a summary judgment
and cross‑summary judgment in a probate case.  See De Ayala v. Mackie, 193 S.W.3d
575, 578 (Tex. 2006); Crowson v. Wakeham, 897 S.W.2d 779, 781 (Tex.
1995).





[3]It is the term Atangible property@ that is the subject of this appeal.





[4]The import of the parties=
positions is that if Atangible property@ includes realty as opined by Ormand, then that realty
was inherited by Eleanor and upon her death was then inherited by the Heirs and
Ormand.  On the other hand, if Atangible
property@ does not include realty as opined by the Heirs, then
that realty was placed into the Trust and upon Eleanor=s death,
it would pass to the Heirs, excluding Ormand.





[5]The Heirs asserted that the only possible explanation
for $472,693 in assets passing into the Trust was that a portion of Conard=s real
property had passed into the Trust.





[6]In support of these contentions, the Heirs attached
bank account statements; tax statements; tax receipts; and oil, gas, and
mineral lease and division orders.





[7]See Wheeler v. Box, 671 S.W.2d 75, 78 (Tex. App.CDallas 1984, no writ) (finding that tangible property
is commonly understood to be property that is capable of being handled or
touched and includes both real and personal property); Cont=l
Homes Co. v. Hilltown Prop. Owners Ass=n, Inc., 529
S.W.2d 293, 296 (Tex. Civ. App.CFort Worth 1975, no writ) (stating that tangible
property includes both real and personal property); Erwin v. Steele, 228
S.W.2d 882, 885 (Tex. Civ. App.CDallas 1950, writ ref=d n.r.e.) (construing a will).